## John G. Erwin v. Eliphalet M. Clark.

*Storage in Grain Elevator. — Bailment. — When Trover will lie.* — Defendant, being the proprietor of a grain elevator, received from plaintiff a quantity of wheat in store. The receipt which he gave provided that the wheat should be delivered on return of the receipt properly indorsed by the party to whose order it was, by its terms, deliverable, and on payment of charges; and that loss or damage by fire was at the owner's risk. Upon demand and refusal to deliver the quantity of wheat specified in the receipt, plaintiff brought an action of Trover to recover its value. Proof was made of an usage, well known to

ERWIN v. CLARK.

both parties, according to which grain so received is mixed with other like grain in kind and quality, and that delivery of the same identical grain is not made or expected, but only an equal amount of the same kind and quality; — *Held*, That giving full effect to such usage, and treating it as incorporated into the receipt, the transaction did not amount to a sale, but constituted a bailment, and that trover was the proper remedy.

*Usage.* — Whether, under such a receipt, and without any subsequent or other agreement, evidence of usage is admissible to relieve the bailee from its legal effect : *Quere.*

*Special Verdict.* — The Jury, in rendering a special verdict, should confine themselves to the facts, and leave the Court to render such judgment upon the facts so found as the law will warrant.

*Heard April* 19 *and* 26.     *Decided October* 27.

Error to Wayne Circuit.

This was an action of trover brought by Erwin — the plaintiff below — to recover for the conversion of five hundred bushels of wheat. Plea, the general issue. The cause was tried by a jury, who returned the following special verdict :

"The cause coming on for trial, thereupon comes a jury, to wit: Jacob F. Carman and others, who are duly elected, tried and sworn, sit together, and hear the evidence, arguments of counsel, charge of the Court, retire under the charge of an officer duly sworn to attend them, to consult of their verdict, and coming again into Court, and being inquired thereof upon their oaths, say that in or about the month of October, 1861, the plaintiff was a dealer in wheat, residing in said city of Detroit, and the defendant, who was also a resident of the city of Detroit, was the proprietor of a wheat elevator, situated therein, where wheat, and other grains, were received, stored, and delivered for various dealers, and that during said month of October, the defendant received of the plaintiff the five hundred bushels of wheat demanded in this case, together with a large quantity of other wheat in store, and gave to the plaintiff therefor various receipts in form like the following, which is a copy of one of said receipts :

" ' E. M. CLARK.       " ' D. & M. R. R. ELEVATOR.
" ' No. 362.             " ' DETROIT, Oct. 12th, 1861.
           " ' Received in store from D. & M. R. R.'d,
from car No. 72, three hundred and fifty-three bushels.
40 lbs. No. 1 white wheat subject to the order of J.
Crampton, agt., endorsed herein, and deliverable upon re-
turn of this receipt, and on payment of charges (7 08.)
Chgs. for 20 days, paid Oct. 14, '61.
    · " ' Loss or damage by fire, acts of Providence, and
heating at owner's risk.
" ' 353 bush. 40 lbs.         " ' WM. D. STRONG, Agt.'

  " On the back of above receipt are the following en-
dorsements :

        " ' Deliver to J. Standish or order.
                    " ' Per J. CRAMPTON,
                        " ' D. TODD.
" ' J. D. STANDISH.'

  " And the jurors aforesaid, upon their oaths aforesaid,
do further say, ' that according to a uniform and well
settled usage among wheat dealers and persons engaged
in and connected with that trade, ˉwhich usage was
well known both to said plaintiff and said defendant,.
wheat so received for the purpose as aforesaid, and for
which receipts like those in this case are given, is mixed
with other wheat of the same kind and quality, which
kind and quality are determined at the time of its re-
ception by an Inspector appointed by the Board of Trade
of the city of Detroit for that purpose, and that the
person so receiving it for storage and delivery, is not
expected or obliged to re-deliver the same identical
wheat, but that he is at liberty to deliver that iden-
tical wheat to other persons, and is only expected or
obliged to deliver to the person storing it, wheat of the
same kind and quality ; ' and · the jurors aforesaid, upon
their oaths aforesaid, do further say, that the plaintiff,

ERWIN v. CLARK.

on or about the 19th day of October, A. D. 1861, did demand of the defendant all of the wheat which he had as aforesaid stored with the defendant at his elevator, and that the defendant then delivered to the plaintiff an amount of wheat of the same kind and quality which the plaintiff had theretofore stored with him, equal in amount to that so stored with him, with the exception of five hundred bushels, which, by a mistake in tallying, was not delivered, and which the defendant, insisting that there was no mistake, has since neglected and refused to deliver, although the same was demanded by the plaintiff before the commencement of this suit.

"And the jurors aforesaid, upon their oaths aforesaid, do further say, that the value of said wheat not delivered as aforesaid, at the time of filing the declaration in this case, was five hundred and twenty-five dollars, and if the plaintiff is entitled to recover at all, he is entitled to recover the said sum of six hundred and two and fifty-eight one hundredths dollars.

"But whether or not, upon the matters aforesaid, by the jurors aforesaid, by the form aforesaid, found, the said defendant is guilty as to the matters in the said plaintiff's declaration laid to his charge, the jurors aforesaid are altogether ignorant; and if, upon all the matters aforesaid, it shall seem to the said Court that the said usage shall not be received to interpret, give instruction to, or control said receipt, that then said defendant is guilty of converting to his own use the wheat in said plaintiff's declaration mentioned, then the jurors aforesaid, upon their oaths aforesaid, say that the said defendant is guilty thereof, in manner and form, as the said plaintiff hath in his said declaration complained against him, and in that case they assess the damages of said plaintiff by reason of the matters aforesaid, besides his costs and charges by him about this, in that behalf, to six hundred and two and fifty-eight one hundredths dollars;

but if, upon the whole matters aforesaid, it shall seem to the said Court that the said usage shall be so received as aforesaid, that then said defendant is not guilty of converting said wheat to his own use; then the jurors aforesaid, upon their oaths aforesaid, say that the said defendant is not guilty thereof in manner and form, as he hath in his plea in this cause alleged."

The Court below rendered judgment upon the verdict in favor of the defendant Clark.

*D. C. Holbrook,* for plaintiff in error:

The only question raised in the case is, whether it was competent, as evidence for the defendant, to show a usage to explain the receipts or contracts given for this wheat.

" No extrinsic evidence of usage can be received to vary, *add to,* or *contradict* the plain or *implied* sense of the contract, when once properly ascertained."— *Vol.* 4 *C. & H. Notes, p.* 512, 3*d Ed.; 2 Greenleaf Ev., Sec.* 251; 2 *Parsons' Cont.,* 59; 2 *Sumner R.,* 567.

The following cases, with the extrinsic proofs, were declared to be sales: *Ewing v. French,* 1 *Blackf. R.,* 354; *Wadworth v. Allcott and al.,* 2 *Selden,* 64; *Chase v. Washburn,* 1 *Ohio St. R.,* 244; *Smith v. Clark,* 21 *Wend. R.,* 83; *Norton v. Woodruff,* 2 *Coms. R.,* 153; *Hurd v. West,* 7 *Cowen R.,* 753; *Seymour v. Brown,* 19 *John. R.,* 47. There is not any case where usage was allowed, if the *receipt stated* what disposition was to be made of the property.

The following were declared to be bailments, not sales: *Chase v. Washburn,* 1 *Ohio St.,* 244; *Wadsworth v. Allcott and al.,* 2 *Selden R.,* 64; *Mallory v. Willis,* 4 *Comst.* 76; *Slaughter v. Green and al.,* 1 *Randolph,* 3; *Pribble v. Kent,* 10 *Indiana R.,* 325; *Goodyear v. Ogden and al.,* 4 *Hill R.,* 104; *Dawson v. Kittle,* 4 *Hill R.,* 107.

ERWIN v. CLARK.

In the following cases, very similar to the present, proof of usage was rejected: *Beals v. Terry*, 2 *Sandf. S. C. R.*, 127.

Custom as to delivery of like quantity of other brands not allowed.— *Wolfe v. Myers & Co.*, 3 *Sandf. R.*, 7; *Allen v. Dykers*, 3 *Hill R.*, 593.

Proof that other certificates of same stock might by usage be returned, not allowed. — *Wadsworth v. Allcott and al.*, 2 *Seld. R.*, 64. This case is almost exactly like the present; the receipt is in substance the same, but the intended disposition of wheat was different, as before stated, when the receipt or contract *shows* what was to be done with the property; another disposition by parol was not allowed to contradict the writing.

If the defendant is engaged in a business, conducted as the usage requires, let him so contract, and not contract one way, then do business another, and ask the *Court to change his contract to suit his business.*

*C. I. Walker*, for defendant in error:

1. Usage is admissible to explain ambiguous expressions in a contract, and to show the sense in which they were used by the parties. — 2 *Edwards' Phillips*, 789; *Bowman v. Horrey*, 2 *M. R.*, 85; *Robertson v. Jackson*, 2 *M. G. & S.*, 412; *the Schooner Reeside*, 2 *Sumner*, 569.

2. Usage is also admissible to annex stipulations to written contracts, in relation to which the contract itself is silent.— 2 *Parsons on Contracts*, 50; 2 *Edwards' Phillips*, 789, 791 *and 2, and note; Wigglesworth v. Dallison, Douglas*, 201; *Hutton v. Warren*, 1 *M. & W.*, 466; *Metzner v. Bolton*, 9 *Ex.*, 520; *Stultz v. Dickey*, 5 *Binn.*, 287.

And, 3. To vary and control the meaning of particular words, and to give to them a sense and meaning entirely different from what they commonly bear. — 2 *Parsons on Con.*, 51, 56; 2 *Edwards' Phillips*, 726, 790; *Smith*

v. *Wilson*, 3 *B. & Ad.*, 728; *Soutier v. Kellerman*, 18 *Mo.*, 511; *Clayton v. Grigson*, 5 *Ad. & E.*, 300; *Lewis v. Marshall*, 7 *M. & G.*, 729; *Coit v. Com. Ins. Co.*, 7 *Johns.*, 385; *Cochran v. Retburgh*, 3 *Esp.*, 121; *Thompson v. Sloan*, 23 *Wend.*, 77.

But such is not the object of introducing evidence of usage. — See also *Renner v. Bank of Columbia*, 9 *Wheat.*, 581; *Clark v. Baker*, 11 *Met.*, 189; *U. S. v. Arredondo*, 6 *Pet.*, 714; *Brown v. Byrne*, 26 *E. L. and Eq.*, 247.

The very object of such evidence is to vary the legal effect of the words, as interpreted according to their ordinary sense, but it does not vary the real contract which the parties have made, but simply shows what that contract is.

Indeed, where there is no ambiguity, the only purpose of such evidence is to vary the *apparent* meaning of the contract, and that, too, where, as ordinarily interpreted, the terms are express and clear. — *Cases ante;* 2 *Edwards' Phillips*, 728, 731, 788; 2 *Parsons on Con.*, 48 *n.; Brown v. Byrne*, 3 *E. & B.*, 704; *Uhde v. Walters*, 3 *Camp.*, 16; *Robertson v. Money, R. & M.*, 75; *Grant v. Straddox*, 15 *M. & W.*, 757; *Nowlan v. Ablett*, 2 *C. M. & R.*, 54; *Metzner v. Bolton*, 9 *Ex.*, 518; *Parker v. Ibbotson*, 4 *C. B. N. S.*, 340; *Avery v. Stewart*, 2 *Con.*, 69; *Sampson v. Gazzam*, 6 *Port.*, 133; *McClure v. Cox*, 32 *Ala.*, 621; *Gordon v. Little*, 8 *S. & R.*, 533; *Eyre v. Marine Ins. Co.*, 5 *W. & S.*, 116; *Merchants' M. I. Co. v. Wilson*, 2 *Md.*, 240; *Dixon v. Dunham*, 14 *Ill.*, 324.

Undoubtedly, where it is sought by usage to give an entirely different meaning to a contract from that which it would otherwise bear, the proof of the usage should be full and clear, and brought home to both parties, either by proof or satisfactory presumption. — *Robertson v. Jackson*, 2 *M. G. & S.*, 424; *Lewis v. Marshall*, 2 *M. & G.*, 743.

The application of these principles to the present case

ERWIN *v.* CLARK.

leave no doubt as to the proper interpretation of this contract.

Here was a uniform and established usage, known not only to wheat dealers generally, but to those parties in particular.

The parties contracted with this usage, and the wheat which was "deliverable" was *any* "No. 1 white wheat," and not the specific wheat received.

To exclude the usage would be, therefore, to give the contract an interpretation directly at variance with the intention of the parties.

CAMPBELL J.:

This was an action of trover brought to recover certain wheat stored by plaintiff with defendant, and not delivered, either specifically or in kind, when called for. Evidence was received, and acted upon by the jury, of an usage whereby wheat so stored on similar receipts was mixed with other wheat of like kind and quality, and that a delivery of the same wheat is never expected, but only of similar wheat of the same quality. This usage is found to have been known by the parties. Upon this finding, judgment was rendered against the plaintiff on the ground that his remedy was in *assumpsit*, and not in trover, the transaction not creating a bailment, but amounting to a sale.

My own individual opinion has been that, under such a receipt as was given here, without any subsequent agreement to modify it, no usage could be shown to relieve the defendant from restoring the identical wheat. The case does not find anything more, in fact, than an ordinary storage, and does not find that any mingling took place with other wheat. It rests, therefore, on the naked fact of usage, which is claimed to be admissible to turn a bailment into a different arrangement from what it directly purports to be. This receipt promises

on its face to restore the identical wheat in so many words. It charges storage upon it for a specific period. It leaves plaintiff liable for losses by heating, fire, or inevitable accident — not to the warehouse, but to the wheat. These provisions are senseless, unless the plaintiff retained his property in the grain, and they are not applicable to anything but the grain delivered to the bailee. It is not found that the usage covers these risks. It has appeared to me that a usage which absolutely contradicts the contract in all its essential features is not admissible under pretext of explanation. In the absence of a finding that plaintiff had in some way consented to a modification of the contract by his acts, or by his direct assent, I, myself, should have been disposed to hold the contract must govern. But as the case is designed to present for consideration the effect of a contract made in accordance with such a usage, and we are all agreed concerning it, we have deemed it best, waiving the question of admissibility, and not deciding it, to place our decision upon the same grounds as if the usage were not only admissible, but incorporated directly into the contract in terms. It refers to the custom of elevating wheat or other grain into common bins, and drawing out from the common mass an equivalent amount when demanded. It may not be safe to hold, without a full investigation of points which do not always suggest themselves in advance upon new trade usages, that the property rights of a depositor of wheat in an elevator, can always be enforced in the same way against all persons. But, as against the bailee at least, it seems to us the proprietary right still remains, being converted, however, into a tenancy in common, instead of an ownership in severalty. The jury do not find that the depositor under such a usage considered himself as making a sale, and as looking to the personal liability of the warehouseman. Such an usage would be, to say

ERWIN *v.* CLARK.

the least, a very singular one, and a very clumsy way of selling. It is evident that the depositor expects to receive back his wheat directly or indirectly, and regards the elevation as a method of handling grain in which he retains an interest. Allowing it to be mingled with the grain of others may subject him to some risks and disadvantages, but, as between himself and his bailee, he has only allowed it to be mixed in such a way that his aliquot part is as easily restored as if no commingling had taken place. We held in *Fiquet v. Allison*, 12 *Mich.*, 328, that a refusal to deliver the proper number of bushels by a tenant in common, who had taken charge of it, upon reasonable request, might amount to a breach of duty, which could be treated as a conversion. This case is stronger, because the tenancy in common was only created for the purpose of agency. The mixture, by consent, of grain of the same kind and value has never been regarded, even by the most rigorous rules of the Common Law, as affecting the right of property of either owner in his aliquot portion as against the other. — 2 *Bl. Com.*, 405; *Story on Bailments*, §40.

We think, therefore, that, upon the facts found in this case, there was a right of recovery in trover, and that the action was properly brought.

After finding the facts specially, the jury go on to apply the law according to their own judgments, and determine that if the usage is allowed to prevail, the plaintiff cannot recover. This is entirely beyond their province. Having found enough to determine the plaintiff's right to recovery, their verdict entitles him to such judgment as the facts so found will justify, without regard to their legal opinions on the subject.

Judgment below must be reversed, and a new judgment must be entered on the verdict for the plaintiff for six hundred and two and fifty-eight one hundredths

ERWIN v. CLARK.

·dollars, with interest from January 18, 1864, and costs ·of both courts.

·CHRISTIANCY J.:

. If it was necessary to the decision of this case to ·determine whether the custom proved was admissible, so far to modify the contract as to make it an undertaking to deliver an equal quantity of the same kind of wheat, instead of the same identical wheat; or if the question, whether this was a contract of bailment or sale, depend- ed entirely upon this point, I should be disposed to hold the proof of custom admissible to determine the sense in which the parties used the term "deliverable," and to show that the delivery of the like quantity and quality, instead of the identical wheat, was intended.

But there are several other provisions of the contract, ·as noticed by my brother Campbell, · which are wholly inconsistent with the idea of a sale, and which fix upon it the character of a bailment. In fact, such, I think, is the character of the whole contract. And while a custom may be shown to explain the sense in which the parties have used particular terms, it is not com- petent to change the entire contract. No proof of usage or custom, however strong, could be permitted to convert a promissory note into a policy of insurance, or the lat- ter into a deed of, conveyance. And it is at all times competent for parties, notwithstanding the existence and knowledge of a custom, to enter into a contract which shall not be affected by it. This, I conceive, the parties have done here, by the other terms of the contract, so far as the question of sale or bailment is involved, whether the receipt should be construed as an under- taking to deliver the same, or an equal quantity of the same kind of wheat. I do not assent to the doctrine, which has been held in several cases, that this consider- ·ation alone must always, of necessity, determine whether

the contract be one of sale or bailment. It is little short of absurdity, it seems to me, to hold a contract to be one of sale when it is evident that neither of the parties intended it as such, and there is no illegality in the contract. As no offer was made in the present case to satisfy the receipts by the delivery of wheat of the same quantity and quality, I concur with my brother Campbell, and in his reasoning, with the single exception above alluded to, and am entirely satisfied that the contract in the present case is one of bailment and not of sale, whether the custom was or was not admissible upon the point indicated.

MARTIN Ch. J. concurred in the result.