## (CONTINUED FROM VOL. XXXI.)

———◆———

## William T. Underwood v. The People.

*Criminal law: Jury trial: Right to give general verdict.* The right of trial by jury, being secured by constitutional provisions, cannot be substantially changed in its character by legislative enactment; and one of its substantial elements is the right of the jury in criminal cases to give a general verdict on the merits.

*Criminal law: Jury trial: General verdict: Insanity: Special finding.* And while it would not be competent for a jury to withhold a verdict of not guilty on a reasonable doubt of insanity, though they were unable to find specially, as required by the statute (*Laws of 1873, Act No. 168*), that the prisoner was insane, yet where they agree that the prisoner was insane, and that he would have been guilty if not so, they are at liberty, if they choose, to find that fact specially; and such a verdict, when rendered, will not be treated as unauthorized.

*Statute construed: Insane persons: Restraint of liberty: Recovery: Proceedings for release.* The statute (*Laws of 1873, Act No. 168*) providing for the confinement in the insane hospital of the state prison of such persons as are acquitted of murder and other high crimes on the ground of insanity, until discharged by the governor on receiving the certificate of the circuit judge of the circuit where the trial was had and the medical superintendent of the state insane asylum, upon an examination made by them after having been summoned for that purpose by the prison inspectors, that the prisoner is no longer insane, fails to furnish adequate means for the enforcement of the remedy provided against the restraint being continued beyond the necessity which alone can justify it, and is objectionable on that ground.

*Constitutional law: Personal liberty: Due process of law.* This statute is moreover held to be in plain violation of the constitutional safeguard against restraints of personal liberty without due process of law; the proceedings contemplated by it are not only inquisitorial and *ex parte*, but they cannot be set in motion except at the will of the prison inspectors, so that practically the liberty of the person confined is left to depend upon the uncontrolled pleasure of the inspectors.

*Heard April 14. Decided April 27.*

Error to Recorder's Court of Detroit.

---

*In all cases heard at this term prior to April 20th only three judges sat.

*Henry M. Cheever*, for plaintiff in error.

*Andrew J. Smith, Attorney General*, for the People.

CAMPBELL, J:

Underwood brings error upon a judgment of the recorder's court of Detroit, whereby he was committed to the state prison insane hospital, as a person charged with murder and acquitted on the ground of insanity. He claims .that the statute is invalid.

The statute in question, being act *No. 168* of the *Laws of 1873*, entitled "an act to provide for the custody and safe keeping of persons who are tried for murder and other high crimes, and are acquitted by reason of insanity," provides, in substance, that when the defense of insanity is set up in the cases provided for, the jury shall find specially whether the respondent was insane when the alleged crime was committed, and if acquitted on that ground the verdict shall so declare. In such case the court is to sentence him to confinement in the insane hospital of the state prison until discharged in the manner pointed out. This can only be done when the prison inspectors summon (as they are empowered to do) the circuit judge of the circuit from which he is sent, and the medical superintendent of the Kalamazoo insane asylum, who are thereupon to examine into his condition, and if they certify he is not insane, the governor is to discharge him.

The finding of the jury is confined to the prisoner's condition at the time of the commission of the alleged criminal act. The indictment or information embraces, and can lawfully embrace, no issue except the prisoner's guilt as charged. The right of trial by jury is secured by constitutional provisions, and it would not be competent to make any substantial changes in its character. As suggested in *People v. Marion, 29 Mich. R., 31*, one of its substantial elements is the right of the jury to give a general verdict on the merits. Any collateral

inquiry would be foreign to the issue.    And as no insane person is subject to be put on trial, a finding that they had been trying such a person would be somewhat inconsistent with the notion that the trial could have been proper.    The statute has avoided this error by confining their attention to the time of the offense; and while it is not competent to prevent an acquittal on a reasonable doubt of insanity, which would require a general verdict of not guilty, yet if the jury agree that the prisoner was insane, and that he would have been guilty if not so, they are undoubtedly at liberty, though they cannot be compelled, to find that fact specially. We cannot hold a special verdict or finding unauthorized, as the common law furnishes abundant precedents to the contrary.—*1 Hale P. C., 38.*

The questions to be considered must be determined on the assumption that the verdict itself is authorized.

As insanity, when discovered, was held at common law to bar any further steps against a prisoner, at whatever stage of the proceedings, it was always competent to institute an inquiry into his condition.    This investigation was sometimes had by the court alone, and sometimes by aid of a jury of inquest,—which is regarded as the safest and most regular practice.—See *1, Hale P. C., 29 to 37, passim.* There are some English statutes providing for most cases. In England the detention is during her majesty's pleasure, whether on an acquittal by reason of insanity, or upon an inquest.—See *Oxford's case, 9 C. & P., 525; Regina v. Goode, 7 A. & E., 536; Reg. v. Hodges, 8 C. & P., 195; Rex v. Pritchard, 7 C. & P., 303; Rex v. Dyson, 7 C. & P., 305.*    In *Oxford's case* the jury evidently had doubts whether he had actually done the act charged, and subsequent events showed that it was not likely he was dangerous, if insane at all, yet he was never discharged.    Our compiled laws, long before this statute, authorized the judge to conduct such an inquiry, when the jury render such a verdict,—*C. L.,* § *7957,*—and this is a better course.

There can be no reason to doubt the propriety of making provision to secure to such unfortunate persons protection and

care, in such a way as to prevent them injuring or being injured, if they are dangerous or in need of seclusion. The state has an ultimate guardianship over *non compotes*, in cases where it is necessary.

But, inasmuch, as such authority can only exist over those who are thus disqualified, the power of determining their condition is one of great importance, and one which especially involves judicial oversight. In this country, where all legislation must be within constitutional limits, and does not reach the full parliamentary range, private liberty can never be subjected to the mere discretion of any person. No one can be deprived of liberty without due process of law. Any involuntary control or seclusion is imprisonment, and that is only justifiable when enforced under valid laws. Every person has a right at all times to resort to the courts to have the legality of restraint determined, unless he is imprisoned under a valid judgment, under proceedings where he had a regular trial or hearing.

The present statute requires the respondent to be confined until he is discharged in the manner pointed out by the act. This requires, *first*, the action of the prison inspectors, for whose action the statute has made no direct provision, unless they choose; *second*, the summoning of a circuit judge from any part of the state to the state prison, and the summoning of the asylum superintendent from Kalamazoo to the same place; *third*, a joint examination and agreement,— either being competent to balance the other, and their disagreement turning the scale in favor of imprisonment.

It was held in *People ex rel. Att'y Gen. v. Lawton, Judge of Probate, 30 Mich. R., 386,* that a law was not enforceable, unless it furnished adequate means to secure the purposes for which it was enacted.—See also *People v. Smith, 9 Mich. R., 193.* It would be attributing more than folly to the legislature to assume that they would intentionally pass a law which would leave a sane man liable to perpetual imprisonment where he has been acquitted of crime. There is nothing in this law or elsewhere which could compel the per-

formance of the functions necessary to release a sane person committed to the insane asylum. The inspectors of the prison act or not, as they see fit. Neither the prisoner nor his friends can compel action. No circuit judge can be compelled to perform functions not judicial in that capacity, and if he could, the law points out no means of bringing him and the medical superintendent away from their own counties at the command of a board of inspectors. The law furnishes no means of summoning and swearing witnesses, or securing the means of a fair examination, or of determining any rules of action.

But the more serious difficulty is in the nature of the proceedings themselves. In the first place the prisoner is sent into confinement without any legal investigation into his condition at that time, when he may be perfectly sane, and when, having been acquitted, he is entitled to all the privileges of any innocent man. There may be a very long interval between the offense and the trial.

Having been so secluded, he is excluded from the right, and all others are excluded from the power of resorting to any effectual means, or any means whatever, of securing a judicial inquiry into his sanity. Neither judge nor expert has any power under our constitution to select his own means and process of inquiry, and pass *ex parte* upon the liberty of citizens. The proceedings contemplated by this statute are not only inquisitorial and *ex parte*, but the officers selected, who are undoubtedly as fit as any one to conduct such inquiries, have no power to act until the inspectors choose to call them. It practically leaves the liberty of the person confined to depend upon the uncontrolled pleasure of the inspectors. A more dangerous scheme, and one more entirely opposed to the constitutional provision securing to every one the protection of due process of law, could hardly be devised.

It is a result of the dangers which have been multiplied by the absurd lengths to which the defense of insanity has been allowed to go, under the fanciful theories of incompetent and

dogmatic witnesses, who have brought discredit on science, and made the name of experts unsavory in the community. No doubt many criminals have escaped justice by the weight foolishly given by credulous jurors to evidence which their common sense should have disregarded. But the remedy is to be sought by correcting false notions, and not by destroying the safeguards of private liberty.

The judgment must be reversed, and the prisoner discharged.

COOLEY, J., and GRAVES, CH. J., concurred.