PEASLEY v. LAPEER CIRCUIT JUDGE.

1. TRIAL—SEPARATION OF ISSUES AS TO LIABILITY AND DAMAGES—
   DISCRETION OF COURT—CONSTITUTIONAL LAW—JURY TRIAL.
       Pretrial order of trial court in automobile negligence case re-
       quiring separate submission of the liability proofs for jury
       determination by special verdict before submission of any
       evidence of damages *held,* an abuse of discretion under the
       circumstances, by KAVANAGH, C. J., and SMITH and SOURIS, JJ.,
       and unconstitutional as a denial of the right to trial by jury,
       by BLACK, J. (Const 1908, art 2, § 13; Const 1963, art 1, § 14;
       GCR 1963, 505.2).

2. SAME—IDENTITY OF WITNESSES.
       It was not error for trial court to refuse to order defendant to
       disclose the identity of witnesses he intended to call at the trial.

3. COSTS—MANDAMUS—SEPARATION OF ISSUES OF LIABILITY AND DAM-
   AGES.
       No costs are allowed in mandamus proceeding to vacate a pretrial
       order separating issues of liability and damages in automobile
       negligence case.
   DETHMERS, KELLY, and O'HARA, JJ., dissenting.

Original mandamus by Frank R. Peasley against
Timothy C. Quinn, Circuit Judge for the County of
Lapeer, to compel vacation of pretrial order separat-
ing issues of liability and damages in a pending neg-
ligence case and directing that issue of liability be
tried first. Submitted October 8, 1963. (Calendar

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 53, 54.
[2] 17 Am Jur, Discovery and Inspection § 27.
[3] 35 Am Jur, Mandamus § 393.

No. 7, Docket No. 49,858.) Writ granted June 1, 1964. Rehearing denied September 2, 1964.

*Peter F. Cicinelli* and *Eugene D. Mossner,* for plaintiff.

*Carl H. Smith, Sr.,* and *Thomas R. McAllister,* for defendant.

Souris, J. The principal issue presented for decision in this case is the propriety of a pretrial order in an automobile negligence case requiring separate submission of the liability proofs for jury determination before submission of any evidence of damages. Other courts have considered this and related issues, as have the writers of numerous articles appearing recently in legal journals. See *Hosie* v. *Chicago & N. W. R. Co.* (CCA 7, 1960), 282 F2d 639, certiorari denied 365 US 814 (81 S Ct 695, 5 L ed 2d 693); *Iley* v. *Hughes* (1958), 158 Tex 362 (311 SW2d 648, 85 ALR 1); *Bowen* v. *Manuel* (1962, Fla Dist Ct App), 144 S2d 341; 85 ALR2d 9; Miner, Court Congestion: A New Approach, 45 ABAJ 1265 (1959); note, 46 Iowa L Rev 815 (1961); note, 46 Minn L Rev 1059 (1962); note, 48 Va L Rev 99 (1962).

## I.

In Michigan, prior to January 1, 1963, there was no express authority for such judicial separation of issues for presentation at trial excepting only for the reference in our former Court Rule No 35, § 4 (3) (1945)[1] to consideration of "the separation of issues" by the judge and counsel at pretrial conference in contested civil actions. That language was never construed by us to authorize the separa-

[1] As added in 1952 and amended. See 352 Mich xv.

tion of issues for trial before a single jury. However, while our 1945 rules were still in effect Judge Quinn invoked Rule No 35, § 4 (3) to support an order in an automobile negligence case requiring separation of issues for trial.[2] We issued our order to show cause in this original mandamus proceeding, instituted by the plaintiff in the negligence suit pending before Judge Quinn, to review his order. In the interim, however, we adopted new rules of procedure including one, GCR 1963, 505.2, by which separation of issues for trial is expressly authorized. Because our new rules may be applied upon the subsequent trial of the negligence suit notwithstanding its inception prior to their promulgation (GCR 1963, 14), we may properly consider the issue as if it had arisen originally under the authority of our current Rule 505.2.

Judge Quinn's order, in addition to requiring the separation of the issues of liability and damages for jury submission, required also that the liability issue be determined by special verdict. Thus, instead of permitting the jury to reach a general verdict on the issue of liability alone and only on liability proofs, as is contemplated, for example, by local rule 21 of the United States district court for the northern district of Illinois (4 Fed Rules Serv [2d] 1136), the jury in this negligence suit will be required to make special findings of fact, in accordance with our special verdict practice (GCR 1963, 514), based upon which fact findings the trial judge will determine whether plaintiff has proved defendant's liability. Only if plaintiff does prove liability will he be permitted to present his damages proofs before

---

[2] The pertinent provision of the pretrial order reads as follows:

"At the trial of this cause the issues of liability and damages will be separated and the former tried first. The question of liability will be submitted on special verdict pursuant to section 7 of Rule No 37, Michigan Court Rules."

the same jury for what will amount to another special verdict.

The argument is made that our Constitutions of 1908 (art 2, § 13) and of 1963 (art 1, § 14) guarantee the right of trial by jury as that right was known to the common law and that the separation of issues for trial was not permitted at common law. Implicit in the argument is the assumption that the separation of issues for submission to a jury constitutes a substantial change in the character of a jury trial as known to the common law which neither this Court nor the legislature is constitutionally competent to make. *People* v. *Marion,* 29 Mich 31; *Underwood* v. *People,* 32 Mich 1 (20 Am Rep 633); *Swart* v. *Kimball,* 43 Mich 443; *McRae* v. *Grand Rapids, L. & D. R. Co.,* 93 Mich 399 (17 LRA 750); and *People* v. *Bigge,* 297 Mich 58. What this claim amounts to, in the context of this case, is that plaintiff has a constitutionally protected right to submit to the jury all his proofs on all the fact issues presented by his case, no matter how complex, before the jury may be allowed to deliberate upon and decide any issue, however separable from other issues.

The United States supreme court rejected an analogous claim, as applied to the Seventh Amendment's guarantee of jury trial in Federal courts, in a case challenging the constitutionality of an order for new trial limited only to the issue of damages. *Gasoline Products Co., Inc.,* v. *Champlin Refining Co.* (1931), 283 US 494 (51 S Ct 513, 75 L ed 1188). There, the supreme court said (p 498) that the significant element of substance in the right to trial by jury is the right to jury determination of facts and that the form of such determination was not of vital significance. It also noted that the constitutional guarantee does not prohibit introduction of new methods for the ascertainment of facts. See, also, *Hosie* v. *Chicago & N. W. R. Co., supra.* We

perceive no basis for reaching a contrary result with reference to our local constitutional jury guarantees. For at least 100 years a special verdict practice has been known to the jurisprudence of this State, *Erwin* v. *Clark*, 13 Mich 10, with reference to which no constitutional objection can be made. While traditionally special verdicts require jury deliberation and fact decision after all proofs are submitted, Judge Quinn's order, in its practical consequences, deviates from such traditional practice only to the extent that the jury is called upon to perform part of its function, as to liability, prior to the introduction of damages proofs. We do not consider such deviation from traditional special verdict practice of constitutional magnitude.

## II.

Having rejected the constitutional challenge to the separation of issues for jury submission and decision, as authorized by GCR 1963, 505.2, questions of policy remain regarding the circumstances justifying orders for such procedure. Our rule is expressly limited to situations where such orders of separation are required "in furtherance of convenience or to avoid prejudice." It is not a rule for wholesale application to all cases or to all of a particular type or to all in a particular circuit. Rather, the rule is cast in language which indicates clearly that it is designed for selective application to those cases in which the convenience of the parties and the court or the avoidance of prejudice compels such deviation from our traditional trial practices.

In no event should the court rule be invoked to order separate submission of issues unless the issues are in fact separable in the sense that they may be proved independently of other issues. Thus, affirmative defenses such as payment, release, satisfaction,

discharge, license, fraud, duress, estoppel, which if established would be dispositive of the entire case, may be separable and, in appropriate circumstances, may be ordered submitted separately for jury or court determination before other proofs are taken. See King, Michigan Practice, § 422, and 2 Honigman and Hawkins, Michigan Court Rules Annotated, § 505, authors' comments, p 368. Likewise, claims and counterclaims will, more likely than not, be separable although that fact alone would not justify their separation for trial purposes over the objections of a party.

When we consider the separation of issues which together constitute a single claim, as is involved in the case at bar, the likelihood of separability is greatly diminished. Furthermore, even in circumstances which would suggest separability in theory, the practical necessities of evidentiary proof may make theoretically separable issues practically interdependent,—for example, when the same witnesses must be relied upon for proof of damages as are relied upon to prove liability. The showing of compelling necessity for separation under such circumstances, in the interest of convenience or the avoidance of prejudice, would have to be very strong to justify interference with a party's presentation of proofs in the customary fashion.

The stated reason for entry of the challenged order was that time and effort will be saved in the event that plaintiff fails to establish the issue of defendant's liability. In that event, the parties and the court, it is said, will be spared the time and effort otherwise required in offering proofs on the damages issue. While that may be the ultimate result in a given case, we do not regard its expectation (which may, in fact, be illusory; see note at 46 Iowa LR 815–831 [1961]) as sufficient cause to invoke the rather extraordinary provisions of sub-rule 505.2 as

they relate to the separation of issues for trial. It is our conclusion that there was no valid reason for the pretrial order requiring separation of the issues of liability and damages and that, on plaintiff's motion therefor, it should have been vacated.

## III.

Two other issues are raised by plaintiff which may be disposed of summarily. Nothing in our former rules *required* a judge to order at pretrial conference, or at any other time, the disclosure by a party of the identity of witnesses he intended to call at trial. Judge Quinn's refusal so to order of the defendant at plaintiff's request, therefore, was not erroneous. The final issue raised involves the judge's refusal to order discovery of written statements made by defendant and other witnesses to defendant's insurance carrier. Since submission of this case to this Court we have decided *Wilson* v. *Saginaw Circuit Judge,* 370 Mich 404, *J. A. Utley Co.* v. *Saginaw Circuit Judge,* 372 Mich 367, and *Otto Taylor Construction Co.* v. *Saginaw Circuit Judge,* 372 Mich 376, each of which is relevant to the discovery sought by plaintiff. Since the negligence action has not yet been tried, we are certain that upon renewal of plaintiff's request for discovery, by motion, the respondent judge will reconsider it in the light of the foregoing cases.

Our writ of mandamus requiring vacation of paragraph 7 of the pretrial order may issue. No costs.

KAVANAGH, C. J., and SMITH, J., concurred with SOURIS, J.

BLACK, J. (*concurring in grant of writ*). As in *Douglas* v. *Edgewater Park Co.,* 369 Mich 320, 331,

this Court faces anew forked trails of divergent legal travel. The only difference is that this time, should the Court take the wrong path of commitment, a final turning point will have been reached and passed in the ever-continuing battle to preserve inviolate a basic right which, throughout this State's history commencing with the Ordinance of 1787,[1] has remained under vigilant guardianship of the Supreme Court of Michigan.

The right of trial by jury is pricelessly precious. Yet for years the busiest of professorial legal ghouls have planned new and virtuously varnished erosions of that right, and now we come to grips with the latest and boldest of their strokes.[2] What is proposed for this typical common-law negligence case— separate trials of, separate instructions concerning, and separate deliberations upon the historically conjoined issues of liability as charged and damages as claimed—strikes directly at Michigan's century-old processionary pledge; that the right of trial by jury, *as it was known to the common law* and to "the previous jurisprudence of the State," shall remain inviolate.

As we shall see Michigan has come to know that pledge best by the words of Chief Justice COOLEY and his revered associates. By itself, and distinctly separate from the application of the seventh amendment of the Constitution of the United States to the courts of the United States (see *Gasoline Products Co., Inc.,* v. *Champlin Refining Co.,* 283 US 494, 498 [51 S Ct 513, 75 L ed 1188]; *Galloway* v. *United States,* 319 US 372, 390 [63 S Ct 1077, 87 L ed 1458] and the recent opinion of Judge Wilson in *Moss* v.

---

[1] Section 14, Art 2 of articles of compact.—REPORTER.

[2] See "Court Congestion: a New Approach," 45 ABA Journal 1265. Yes, indeed, what was ordered in the circuit court below was "a new approach"; an approach unknown to the common law and "the jurisprudence of the State."

*Associated Transport, Inc.* [ED Tenn], 33 FRD 335, 338–340), Michigan's continuant pledge appears in the record of the Ordinance of 1787, art 2; in the record of the Constitution of 1835, art 1, § 9; in the record of the Constitution of 1850, art 6, § 27; in the record of the Constitution of 1908, art 2, § 13; and in the record of the Constitution of 1963, art 1, § 14.

I oppose the stated proposal and call up the support of our nationally distinguished predecessors.

"The constitutional principle which underlies the right is one to which the people governed by the common law have clung with, perhaps, more tenacity than to any other, and they have justly regarded it as not preserving simply one form of investigating the facts in preference to another, where both would have attained the same result, but as securing the mode of trial which was best calculated to ensure a just result and to secure the citizens against the usurpation of authority and against arbitrary or prejudiced action on the part of single individuals, who chanced to be possessed of judicial power." COOLEY, C. J., in *Van Sickle* v. *Kellogg,* 19 Mich 49, 52.

"The right of trial by jury is secured by constitutional provisions, and it would not be competent to make any substantial changes in its character. As suggested in *People* v. *Marion,* 29 Mich 31, one of its substantial elements *is the right of the jury to give a general verdict on the merits.*" CAMPBELL, J., in *Underwood* v. *People,* 32 Mich 1, 2 (20 Am Rep 633). (Italics by present writer.)

"The Constitution [1850] of the State provides that 'The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by 1 of the parties in such manner as shall be prescribed by law.' article 6, § 27. The right is to *remain.* What right? Plainly the right as it existed before; the right to a trial by jury as

it had become known to the previous jurisprudence of the State. *Underwood* v. *People,* 32 Mich 1 (20 Am Rep 633). The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood, under a particular name; and by implication at least, even a waiver of its advantages is forbidden." COOLEY, J., in *Swart* v. *Kimball,* 43 Mich 443, 448. (Italics by Justice COOLEY.)

"It is too well settled to need further citation of authority or argument to show that this part of the Constitution (1850, art 6, § 27), providing that 'the right of trial by jury shall remain,' means the right as it existed at the common law, which was well understood in the previous jurisprudence of the State at the time of the adoption of the Constitution in 1850." (LONG, J., in *McRae* v. *Grand Rapids, L. & D. R. Co.,* 93 Mich 399, 405 [17 LRA 750].)

So long as they offend no Federal right (no such offense is or could be claimed in today's instance) the States respectively have a right to warrant by their Constitution scrupulous preservation of the common-law-understood right of trial by jury. They have the unquestioned power also to define that right as it was "understood in the previous jurisprudence of the State." That is what Michigan has done. So has Tennessee, along with other States. The appellate court of Tennessee recently (*Winters* v. *Floyd* [Tenn App, May 10, 1963], 367 SW2d 288) followed 1 of its earlier decisions, *Harbison* v. *Briggs Bros. Paint Manfg. Co.,* 209 Tenn 534 (354 SW2d 464) to the same point as was made in the Michigan decisions quoted above. From *Winters* (p 290) I take this connected passage from the *Harbison Case* (p 541):

"The right of trial by jury, as thus guaranteed by our Constitution, is the right as it existed at common law up to the time of our separation from England

and the formation of our Constitution. *Garner* v. *State*, 13 Tenn 160, 176–178; *State* v. *Sexton*, 121 Tenn 35, 41 (114 SW 494); *Manning* v. *State*, 155 Tenn 266, 275 (292 SW 438, 451)." 354 SW2d 467.

"At the time of the formation of our Constitution, an incident of the right of trial by jury at common law was that the jury, under proper instructions from the judge as to the law, had the right to decide all the issues of fact, to give a general verdict, compounded of law and fact, in favor of one side or the other." 354 SW2d 468.

Some cautionary declarations should be recorded lest shrills of fearsome consequences become too noisy.

A. I conclude only that an objected-to order for separate trials of the historically linked issues of liability and damages, when such issues have been presented in a typical common-law negligence case, offends Michigan's constitutional right of trial by jury. I do *not* conclude that there may *not* be a separate trial of an additional issue, made say by special plea or affirmative defense (see for example *Denton* v. *Utley*, 350 Mich 332), which issue may always have been cognizable in equity. And I do *not* conclude, once there has been a conventional jury trial of the 2 issues defined above, that there may *not* thereafter be a partial retrial of such issues; which issue may have been tainted in some way by error committed during the original trial.[3]

B. What has been written is not to be interpreted as criticism of what we know as special verdict prac-

---

[3] See, however, our quotation with approval (*Kistler* v. *Wagoner*, 315 Mich 162, at 173, 174) as follows, from *Norfolk Southern R. Co.* v. *Ferebee*, 238 US 269, 273 (35 S Ct 781, 59 L ed 1303):

"Damages and contributory negligence are so blended and interwoven, and the conduct of the plaintiff at the time of the accident is so important a matter in the assessment of damages, that the instances would be rare in which it would be proper to submit to a jury the question of damages without also permitting them to consider the conduct of the plaintiff at the time of the injury."

tice. From the beginning, vouchered by *Hendrickson* v. *Walker*,[4] that practice has been known to the common law and has been preserved as part of the mentioned guarantee of right of trial by jury.

## Conclusion

As the debate rages, over this "new approach" to jury trial of these traditionally entwined issues of fact, the protagonists of such approach make it abundantly clear that their aimed purpose is avoidance of jury "prejudice" which, as they say, affects the jury's verdict upon liability issues and is caused by the harrowing facts of injury, or death and dependence arising from death. If so that is no good reason for destruction of a known and constitutionally guaranteed right. Too, it affronts the oath, taken by "the twelvers", to faithfully employ the instructions of the court to their deliberations. It suggests finally that judges know and apply no "prejudice," subconsciously or otherwise as jurors allegedly are wont to do,[5] and that it is no longer

---

[4] "The power to find special verdicts is as old as the common law, and was always competent. It is a very proper and convenient practice when there is no serious difference between parties on the facts, and in such cases it is not unusual for counsel to agree upon the verdict. This is not so common now as formerly, since our laws have enabled courts to pass upon cases without a jury. But a special verdict is no less competent than before. The statute authorizing special questions contemplates that they shall be put in explanation or aid of a general verdict, but it in no way destroys the competency of the former practice.—See *Keeler* v. *Robertson*, 27 Mich 116" (CAMPBELL, J., in *Hendrickson* v. *Walker*, 32 Mich 68, 69).

[5] "Deep below consciousness are other forces, the likes and the dislikes, the predilections and the prejudices, the complex of instincts and emotions and habits and convictions, which make the man, whether he be litigant or judge. I wish I might have found the time and opportunity to pursue this subject farther. I shall be able, as it is, to do little more than remind you of its existence. There has been a certain lack of candor in much of the discussion of the theme, or rather perhaps in the refusal to discuss it, as if judges must lose respect and confidence by the reminder that they are subject to human limitations. I do not doubt the grandeur of the conception which lifts them into the realm of pure reason, above and beyond the sweep of perturbing and deflecting forces. None the less, if there

safe or fair to trust juries to decide such issues upon 1 set of instructions, 1 continued deliberation, and 1 report to the court of the result of such deliberation. But if the charge is beyond contradiction, that juries are prejudiced habitually in favor of the injured, I would answer the charge with the words of Justice Holmes (Collected Legal Papers, Oliver Wendell Holmes, Harcourt, Brace & Howe, Inc., 1920, pp 237, 238):

"I confess that in my experience I have not found juries specially inspired for the discovery of truth. I have not noticed that they could see further into things or form a saner judgment than a sensible and well trained judge. I have not found them freer from prejudice than an ordinary judge would be. Indeed 1 reason why I believe in our practice of leaving questions of negligence to them is what is precisely 1 of their gravest defects from the point of view of their theoretical function: that they will introduce into their verdict a certain amount—a very large amount, so far as I have observed—of popular prejudice, and thus keep the administration of the law in accord with the wishes and feelings of the community."

The jury is, as some legal writer said years ago, a bridge between the people and the courts which enables Americans to participate directly in courthouse democracy. I would maintain that bridge with vigilance, its value and integrity having been steadily guaranteed by the Constitution, rather than accept more of these innovational and costly novelties; novelties which, perceivably now, insidiously and slyly sap the right of trial by jury.

---

is anything of reality in my analysis of the judicial process, they do not stand aloof on these chill and distant heights; and we shall not help the cause of truth by acting and speaking as if they do. The great tides and currents which engulf the rest of men, do not turn aside in their course, and pass the judges by." Cardozo, The Nature of the Judicial Process, pp 167, 168.

I concur in grant of the writ, noting agreement with Justice Souris that plaintiff's stated and accepted question No 2[6] should be answered in the negative. See *Wilson* v. *Saginaw Circuit Judge,* 370 Mich 404 at 413, 414 (footnote 2).

O'Hara, J. (*dissenting*). In this case we construe a court rule. We adopted it. It reads: (GCR 1963, 505.2)

"Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

An able and experienced trial judge opined:

"The file before the court indicates serious physical injuries and personal damages; extensive testimony will be required properly to establish these elements, and yet the time and effort so expended will avail nothing, if the jury finds no liability. Of more importance, however, is the fact that if there is liability, plaintiff is entitled to an award commensurate with his loss; if there is no liability, not only should defendant have to pay nothing but he should not be put to the time and expense of defending the damage issue. The probability of obtaining this desired result is far greater if liability is tried first and separate from the damage issue."

Our decision here seems to me to be of critical import to the circuit bench of our State. The rule expressly states "the court [the trial court] in furtherance of convenience or to avoid prejudice may order a separate trial." This rule vests the discre-

---

[6] "2. Did the circuit judge abuse his discretion under Michigan Court Rule No 35, § 6 (1945), as added in 1952 (see 334 Mich xl) and amended (see 352 Mich xvii), in denying plaintiff's request for the exchange of a list of known witnesses before trial?"

tion of when and under what circumstances to invoke it in the trial judge. To reverse him, we must if we are not to vitiate the rule completely, find he has abused that discretion. Are we prepared to say as precedent here that Judge Quinn was guilty of an abuse of his discretion? If so, on what basis? He presided at the pretrial, he had the pleadings before him, he had the pulse of the case. To reverse him for the reasons assigned by Justices Souris and Black is to say that the exercise of the trial bench's judgment in the application of this rule, must comport with our discretion, not his. Judge Quinn has in nowise denied plaintiff his right of trial by jury. He ordered separate trials on liability and damage because in his judgment and for the reasons he stated so to do served the rule-stated purposes of "convenience" and the avoidance of "prejudice." How do we upon review here say such an order serves neither "convenience" nor avoids "prejudice?" If any rule of review in our jurisprudence is settled, iterated and reiterated, it is that we do not reverse a trial judge in the exercise of his discretion, absent a palpable abuse thereof.

If we here abandon this position; if we here construe the involved rule to mean the burden is upon the trial judge to justify the exercise of his discretion in this application of a procedural rule, *one way or the other,* we disregard a fundamental precept in the relationship between the trial and appellate court. Whatever our personal philosophy may be insofar as *this* rule is concerned, it is still a rule of practice no different from any other. I do not apprehend why Mr. Justice Souris finds the provisions of this rule "extraordinary." Nothing in the rule itself nor the commentaries thereunder so classify it. Better we repeal or amend the rule to embody our philosophy than to denominate the rule "extraordinary."

In simple substance despite what my conferees have written so forcefully and persuasively, I cannot see that the trial judge did anything except precisely what the rule authorizes him to do and assigned his rule-contained reasons therefor. Under such circumstances I am impelled to vote to deny the writ. I would award no costs.

DETHMERS and KELLY, JJ., concurred with O'HARA, J.

ADAMS, J., took no part in the decision of this case.