JEMAA v MacGREGOR ATHLETIC PRODUCTS

Docket No. 81309. Submitted October 9, 1985, at Detroit. Decided March 13, 1986.

Nassar Jemaa, a resident of Ohio, was injured while playing high school football in Toledo. About ten weeks after his injury, Jemaa was treated for those injuries by Dr. Theodore Cole at the University of Michigan Hospital in Ann Arbor. Jemaa brought an action in Wayne Circuit Court against MacGregor Athletic Products on a products liability theory, alleging that he was injured due to a defect in the helmet he was wearing at the time of the accident, which was designed and manufactured by MacGregor. Plaintiff amended his complaint to include a medical malpractice claim against Dr. Cole. MacGregor brought a motion to decline jurisdiction based on forum non conveniens. The trial court, Michael J. Connor, J., denied MacGregor's motion, the court not being persuaded that sufficient prejudice had been shown by MacGregor. Some months later, MacGregor renewed it motion, focusing its arguments on the possibility of a third-party action against Ohio school officials which, for jurisdictional reasons, would have to be brought in Ohio. Plaintiff was given the opportunity to see if the Ohio school officials would submit to the jurisdiction of the Michigan court. When plaintiff secured from the Ohio school officials consent to being parties in the Michigan action in exchange for a hold-harmless agreement, the court again denied MacGregor's motion to sever and decline jurisdiction. MacGregor filed a motion for reconsideration based on the assertion that plaintiff's action against Dr. Cole was fraudulently brought for the sole purpose of establishing a Michigan forum for the claim against MacGregor. Upon review of the motion for reconsideration, the trial court concluded that factors weighed in favor of an Ohio suit on the claim against MacGregor and that plaintiff was adequately protected and granted MacGregor's motion to sever plaintiff's

REFERENCES

Am Jur 2d, Trial §§ 7 *et seq.*

Appealability of state court order granting or denying consolidation, severance, or separate trials. 77 ALR3d 1082.

See also the annotations in the ALR3d/4th Quick Index under Forum non Conveniens.

action against MacGregor from plaintiff's action against Cole and to decline jurisdiction with respect to plaintiff's claim against MacGregor. The court, however, refused to decline jurisdiction with respect to a cross-claim by Dr. Cole against MacGregor. Plaintiff appealed. *Held:*

1. The question of whether to sever claims is addressed to the trial court's discretion; however, that discretion should be exercised only upon the most persuasive showing that the convenience of all parties and the court requires such drastic action.

2. The trial court did not abuse its discretion in severing the claims, since the malpractice claim against Cole and the products liability claim against MacGregor require different proofs and the proof of those claims will come from unrelated witnesses.

3. Plaintiff was not prejudiced by any reliance on the trial court's earlier rulings.

4. The trial court properly determined that Ohio rather than Michigan was the proper forum for plaintiff's claim against MacGregor.

Affirmed.

1. TRIAL.— SEVERANCE.

The grant or denial of a motion for separate trials rests in the sound discretion of the trial court; however, a court should grant severance only upon the most persuasive showing that the convenience of all the parties and the court requires such drastic action.

2. TRIAL — SEVERANCE — FORUM NON CONVENIENS.

It is not an abuse of discretion for a trial court to sever a products liability claim from a medical malpractice claim and to dismiss the products liability claim on the basis of forum non conveniens where the malpractice claim arose out of treatment of the plaintiff some ten weeks after the injuries allegedly caused by the allegedly defective product and the only contact of the plaintiff with Michigan was his treatment for his injuries in Michigan, since under those circumstances there would be no identity of proofs needed to establish the malpractice claim and the products liability claim.

*Richard M. Goodman, P.C.* (by *William R. Seikaly*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by

*Thomas R. Bowen* and *Mary R. Benedetto*), for MacGregor Athletic Products.

Before: R. M. MAHER, P.J., and WAHLS and HOOD, JJ.

PER CURIAM. Plaintiff appeals as of right from the Wayne Circuit Court's order declining jurisdiction with respect to plaintiff's product liability claim against defendant MacGregor Athletic Products and severing the product liability claim from plaintiff's medical malpractice claim against defendant Theodore Cole, M.D. We affirm.

Plaintiff is a resident of Ohio. In October, 1978, while playing high school football in Toledo, Ohio, he incurred an injury which rendered him quadriplegic. About ten weeks after his injury, plaintiff was treated in Ann Arbor at the University of Michigan Hospital by Dr. Cole.

Plaintiff alleged in his complaint that his injury was due to a defect in his football helmet, which was designed and manufactured by MacGregor. In an amended complaint, plaintiff included his claim against Dr. Cole.

MacGregor does business in Michigan and Wayne County, but its design and manufacture of football helmets is done elsewhere. MacGregor brought a motion to decline jurisdiction based on the doctrine of forum non conveniens. The court expressed its agreement with MacGregor, assuming MacGregor was the only party defendant, but denied the motion because Dr. Cole's presence in the suit provided numerous contacts with Michigan. The court did, however, request briefing on the possibility of severing the claims.

The next time the parties appeared, Dr. Cole stated he had no opposition to MacGregor's motion, and both MacGregor and plaintiff expressed

their views as to what prejudice would result from the court's ruling. The court was not persuaded that the allegations of prejudice were sufficiently supported and denied MacGregor's motion.

Some months later, MacGregor renewed its motion and focused on the possibility of a third-party action against Ohio school officials which, for jurisdictional reasons, would have to be in Ohio. The court held the matter in abeyance for thirty days to give the parties an opportunity to investigate further the availability of jurisdiction over the Ohio coaches and school board and the applicability of Ohio governmental immunity law to the Ohio school officials.

The parties once again returned to court and MacGregor stated that the attorneys for the school board and coaches had given notice that their clients would not submit to Michigan jurisdiction. The court was prepared to grant MacGregor's motion but, nevertheless, gave plaintiff thirty days to make a "last-ditch effort" to investigate whether the Ohio school board and coaches would submit to the jurisdiction of the Michigan court.

Plaintiff returned to court with a hold-harmless agreement in return for which the Ohio coaches agreed to submit to Michigan jurisdiction. MacGregor, however, had a letter from the school board in Ohio refusing to consent to jurisdiction. The court granted plaintiff an additional two weeks to try and obtain a hold-harmless agreement for the school board.

When plaintiff returned with the agreement, the court denied MacGregor's motion to sever and decline jurisdiction. MacGregor, however, raised the possibility that the medical malpractice claim against Dr. Cole was instituted solely to keep the product liability claim in Michigan. The court refused to consider MacGregor's "naked suspi-

cions", but warned that, if it ever became convinced that such was plaintiff's purpose for suing Dr. Cole, it would be sympathetic to MacGregor's motion.

MacGregor subsequently filed a motion for rehearing and also a motion for an evidentiary hearing to determine whether plaintiff had fraudulently joined Dr. Cole in order to retain jurisdiction. To counter a major difficulty that the court had with declining jurisdiction, MacGregor assured the court that, if severance were granted, MacGregor would not attempt at trial to put the blame on Dr. Cole for plaintiff's injuries. In support of its motion, MacGregor pointed to the "peculiar" facts that almost no discovery had taken place between plaintiff and Dr. Cole, counsel for Dr. Cole did not attend the various hearings held on MacGregor's motions, Dr. Cole had not moved for a change of venue to Washtenaw County, and plaintiff was too willing to "cut a deal" with potential third-party defendants. Counsel for Dr. Cole denied an agreement with plaintiff, but acknowledged that plaintiff had previously requested that Dr. Cole file a third-party action against MacGregor solely on the basis of jurisdiction. At the time, Dr. Cole had declined to assist plaintiff but, subsequently, the doctor did file a crossclaim against MacGregor. After hearing the arguments of all the parties, the court concluded that plaintiff was adequately protected and that application of the factors inumerated in *Cray v General Motors Corp,* 389 Mich 382; 207 NW2d 393 (1973), weighed in favor of an Ohio suit. The court therefore granted MacGregor's motion to sever and decline jurisdiction.

Plaintiff brought a motion to reconsider and argued that it was too late to sever since a trial date had already been set and he had acted in

reliance on the court's earlier rulings in obtaining the hold-harmless agreements. The court denied this motion and rejected MacGregor's efforts, then and later, to sever and decline jurisdiction regarding Dr. Cole's crossclaim. The court also dismissed plaintiff's crossclaim against MacGregor.

On appeal, plaintiff brings a three-part attack on the trial court's decision to sever plaintiff's product liability and medical malpractice actions. First, plaintiff argues that the court's ruling is inconsistent with case law construing GCR 1963, 505.2, primarily *Osgerby v Tuscola Circuit Judge,* 373 Mich 237; 128 NW2d 351 (1964), and *Peasley v Lapeer Circuit Judge,* 373 Mich 222; 128 NW2d 515 (1964). Second, plaintiff argues that the court erred by predicating its order on defense counsel's characterization of plaintiff's case against Dr. Cole as weak or minimal. Third, plaintiff argues that the court erred in reversing itself and granting severance where plaintiff had acted in reliance on the court's earlier rulings in obtaining hold-harmless agreements from the coaches and school board in Ohio.

The exercise of the power to separate claims rests within the discretion of the trial court. *Detloff v The Taubman Co, Inc,* 112 Mich App 308; 315 NW2d 582 (1982). However, such power should only be exercised "upon the most persuasive showing that the convenience of all parties and the court require such drastic action." *Osgerby, supra,* p 241. In *Peasley, supra,* the Supreme Court reversed a lower court order which severed the damages issue from the liability question. The companion case of *Osgerby* involved two plaintiffs and one defendant. The Court held that the trial court had abused its discretion by separating the fraud-and-deceit issue from the negligence-and-damages issue. In both cases, the severed issues

constituted a single cause of action and, in *Peasley,* the Court recognized that prosecution of either claim would require identical evidentiary proof. We believe the instant case is distinguishable and we conclude that the trial court did not abuse its discretion in severing plaintiff's claims. This case involves quite different claims against different defendants. The malpractice claim against Dr. Cole arose out of treatment that began about ten weeks after the football accident out of which arose the product liability claim against Mac-Gregor. Different proofs and unrelated witnesses will be required to establish each claim, and the possibility of duplicate litigation is slight.

We are not persuaded by plaintiff's assertion that the trial court based its order to sever on its assessment of the merits of plaintiff's medical malpractice claim. Certainly, the court did refer to and consider statements about the weakness of plaintiff's claim; however, it clearly appears that the court used the statements to support its belief that plaintiff had included Dr. Cole in his suit solely for jurisdictional reasons. The court was focusing on plaintiff's motivation and did not use the perceived weakness of plaintiff's case as a criterion for severing the claims.

Furthermore, we conclude that the court did not abuse its discretion in shifting grounds and granting MacGregor's motion after plaintiff had procured consent to Michigan jurisdiction from the potential third-party defendants in Ohio. MacGregor's efforts to have the court sever the claims and decline jurisdiction because of the lack of compulsory process and jurisdiction over potential witnesses and third-party defendants was not deliberately calculated to mislead plaintiff. *Lothian v Detroit,* 414 Mich 160; 324 NW2d 9 (1982); *Cinderella Theatre Co v United Detroit Theatres Corp,*

367 Mich 424; 116 NW2d 825 (1962). Nor does it appear that any material facts were withheld from plaintiff. *Rix v O'Neil,* 366 Mich 35; 113 NW2d 884 (1962). Finally, we are not convinced that plaintiff has been prejudiced by any reliance on the court's early rulings. *Tobias v Tobias,* 345 Mich 263; 75 NW2d 802 (1956). It is not apparent that the hold-harmless agreements will be binding in an Ohio action.

Finally, plaintiff argues that, even if the severance ruling was proper, the court should not have declined jurisdiction in favor of an Ohio forum. We disagree. The circuit court's decision to decline jurisdiction was not an abuse of discretion. The court carefully balanced the competing interests and advantages in declining jurisdiction. As in *Anderson v Great Lakes Dredge & Dock Co,* 411 Mich 619; 309 NW2d 539 (1981), neither the plaintiff nor, apparently, the witnesses to the football accident reside in Michigan and the accident occurred in Ohio. Although MacGregor does business in Michigan, this is not its principal place of business and its Michigan business is not connected to the manufacturing of the football helmets. Application of the factors enumerated in *Cray v General Motors Corp,* 389 Mich 382; 207 NW2d 393 (1973), to these facts militates in favor of declining jurisdiction.

Affirmed.