MARKMAN, J.
(concurring). I concur with the majority’s analysis and with its conclusion that the trial court did not abuse its discretion in dismissing this case on the basis of the doctrine of forum non conveniens. I write separately to identify additional “public interest” factors that I believe have become increasingly important for courts to consider in light of contemporary economic and legal realities in determining whether a *619 case should be dismissed on the basis of the doctrine of forum non conveniens.[1]
The first of these additional factors is the extent to which it is appropriate for the state of Michigan to *620 enable a foreign plaintiff to avail himself of the more favorable substantive law and procedural rules afforded by Michigan courts in comparison with those of the plaintiffs own jurisdiction. As one commentary has explained:
American courts have become, in the words of the Supreme Court, “extremely attractive”[2] to foreign plaintiffs because of the availability of jury trials, liberal discovery rules,[3] malleable choice-of-law rules, contingency-fees[4] and potentially large compensatory and punitive damage awards.[5] [Dunham & Gladbach, Forum non conveniens and foreign plaintiffs in the 1990s, 24 Brook J Int’l L 665, 666 (1999) (internal citation omitted).][6]
*621 And, as another commentary has explained:
*622 Certain procedural features of the U.S. courts encourage plaintiffs in international disputes to bring their cases in the United States. First, the Seventh and Fourteenth Amendments give plaintiffs the right to trial by jury in most civil suits. Jury trials present several advantages to individual plaintiffs in civil suits against large businesses. American jurors have very different backgrounds and economic sympathies compared to those of the professional judges and career bureaucrats who decide disputes in most foreign courts. Consequently, these juries are more likely to award judgment to individual plaintiffs suing large [multinational corporations]. U.S. juries also award more generous damages than do foreign tribunals, particularly in instances of plaintiffs alleging injury by a corporate entity.[7]For example, in the infamous litigation stemming from an industrial accident in Bhopal, India, the estimated value of the suit in India was no more than $75 million. In contrast, experts estimated that an American jury would award compensatory damages of $235 million, with an even greater amount for punitive damages. [Comment, The forum non conveniens doctrine and the judicial protection *623 of multinational corporations from forum shopping plaintiffs, 19 U Pa J Int’l Econ L 141, 146-147 (1998).][8]
The United States Supreme Court has expressed its concern regarding foreign plaintiffs being allowed to sue American businesses and manufacturers in America on the basis that American law is more favorable to plaintiffs as a class than is foreign law. Piper, supra at 252. The Court has explained, “American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive [if dismissal was barred whenever the law in the alternative forum were less favorable to the plaintiff].[9] The *624 flow of litigation into the United States would increase and further congest already crowded courts.” Id. I believe that if a plaintiffs primary reason for filing a suit in Michigan is to take advantage of Michigan’s favorable laws and procedures and to avoid a foreign court’s less favorable laws and procedures, this should be a relevant factor to be considered by courts in deciding whether to expend the state’s limited resources on a lawsuit. As the United States Supreme *625 Court has held, “dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to ... take advantage of favorable law.” Piper, supra at 249 n 15. As the majority opinion states:
In the instant case, plaintiffs are residents and citizens of Croatia who were injured in an accident in Croatia and plaintiffs have chosen to file their lawsuit in Michigan. Given that plaintiffs live in Croatia and that the underlying accident occurred in Croatia, there is no basis to presume that plaintiffs chose to file this lawsuit in Michigan out of convenience. Further, while there is no direct evidence that the primary reason why plaintiffs chose to file this lawsuit in Michigan was to take advantage of Michigan’s favorable laws and to avoid Croatia’s less favorable laws, no other reasonable explanation has heen presented. [Ante at 614.]
A second additional “public interest” factor concerns the extent to which resolving a particular legal dispute in a Michigan court would compromise principles of judicial comity and undermine respect for the judicial sovereignty of a foreign jurisdiction. “[Principles of judicial comity support the dismissal of controversies whose adjudication is a matter of vital interest to the alternative, foreign forum.” Note, Foreign plaintiffs and forum non conveniens: Going beyond Reyno, 64 Tex L R 193, 195 (1985). “[T]olerance of international forum shopping creates . . . conflicts with basic notions of comity and respect for foreign sovereignty.” Comment, The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs, 19 U Pa J Int’l Econ L 141, 142 (1998). As one commentator has explained:
In cases involving foreign litigants and alternative foreign forums, a shift in the focus of forum non conveniens analysis is needed, away from the convenience of the litigants and toward the appropriateness of the forum, *626 viewed from the perspective of judicial comity. The degree of local interest of each forum is a basis for comparison, and the determination of the applicable law, to the extent that it reflects each forum’s interests, should be a vital consideration as well.
*
Courts should recognize that the application of an American Forum’s law to controversies in which other countries have a vital interest is likely to offend the sovereignty or frustrate the public policies of those countries. [Note, Foreign plaintiffs and forum non conveniens: Going beyond Reyno, 64 Tex L R 193, 222-223 (1985).]
It is important to consider the foreign jurisdiction’s interest in the case and the effect that a Michigan court’s resolution of the case would have upon that jurisdiction.
In this case, a Michigan court is being asked to apply Croatian law to Croatian plaintiffs in a lawsuit arising from an accident that occurred in Croatia. Certainly, a Croatian court would be better equipped at handling a matter of this sort than a Michigan court.
A third additional “public interest” factor concerns the interests of the state of Michigan in establishing and enforcing standards that domestic businesses and manufacturers must satisfy in selling their products abroad as compared to the foreign jurisdiction’s interest in establishing and enforcing standards that foreign businesses and manufacturers must satisfy in selling their products within its borders. As one commentator has explained:
Imposing our legal solutions on other nations, however beneficial when viewed from the perspective of individual litigants, impedes the opportunity for other legal systems to craft local solutions to their citizens’ legal problems. If a foreign forum proves adequate and has the greater interest *627 in the controversy, an American court can best serve the interest of justice by permitting justice to be done elsewhere. [Id. at 223.]
As another commentator has explained:
Allowing forum shoppers to sue in U.S. courts not only hinders foreign relations, but also hurts foreign nations by undermining their development of legal remedies to handle legal controversies in their own courts. Other countries can better assess their own localized needs and set appropriate standards for local conditions. For example, U.S. courts are “ill-equipped to set a standard of product safety for drugs sold in other countries.” [Comment, The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs, 19 U Pa J Int’l Econ L 141, 155-156 (1998), quoting Harrison v Wyeth Laboratories Div of American Home Products Corp, 510 F Supp 1, 4 (ED Pa, 1980) (holding “[t]he United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country”).]
And, as yet other commentators have explained:
Foreign plaintiffs will almost certainly continue to file products liability actions in American courts, instead of their local fora, in order to take advantage of the more favorable substantive law and procedural rules available in the United States. In response, American courts will likely continue to dismiss most such actions based on the flexible doctrine of forum non conveniens.... Private interest factors will often militate in favor of dismissal of suits brought by foreign plaintiffs because the bulk of the witnesses and physical evidence is likely to be located abroad. In addition, public interest factors will tend to warrant dismissal given that foreign fora plainly have a substantial interest in establishing and enforcing the standards that manufacturers must satisfy in selling products there, whereas American courts will often have only a marginal interest in such matters. Accordingly, in dismiss *628 ing these actions, American courts will promote the fundamental goals of best serving the convenience of the parties and the ends of justice. [Dunham & Gladbach, Forum non conveniens and foreign plaintiffs in the 1990s, 24 Brook J Int’l L 665, 703-704 (1999).]
“An important factor that courts have looked to in deciding whether to dismiss an action is the relative importance of the foreign jurisdiction’s public interest in controlling the marketing and sale of products within its borders.” Id. at 686.
In Doe v Hyland Therapeutics Div, 807 F Supp 1117, 1130 (SD NY, 1992), the United States District Court for the Southern District of New York concluded that where Irish plaintiffs brought suit in New York against United States manufacturers, claiming that they contracted the human immunodeficiency virus (HIV) from contaminated blood clotting products supplied by the defendants, “our ‘generalized interest’ in regulating the flow of dangerously defective American pharmaceutical products into the stream of world commerce cannot transcend Ireland’s ‘intensely local interest’ in adjudicating a controversy that profoundly affects its citizens.” As that court explained:
The forum whose market consumes the product must make its own determination as to the levels of safety and care required. That forum has a distinctive interest in explicating the controlling standards of behavior, and in enforcing its regulatory scheme. The standards of conduct implemented, and the level of damages assessed, will reflect the unique balance struck between the benefit each market derives from the product’s use and the risks associated with that use; between the community’s particular need for the product and its desire to protect its citizens from what it deems unreasonable risk. The forum’s assessment will affect not merely the quality of the product, but also the price, quantity, and availability to its public. Such an assessment must remain the prerogative of *629 the forum in which the product is used; each community faces distinct demands, and has unique concerns that make it peculiarly suited to make this judgment. We are ill-equipped to enunciate the optimal standards of safety or care for products sold in distant markets, and thus choose to refrain from imposing our determination of what constitutes appropriate behavior to circumstances with which we are not familiar. While imposing our presumably more stringent standards to deter tortious conduct within our borders could afford a higher degree of protection to the world community, such an approach would also ignore the unique significance of the foreign forum’s interest in implementing its own risk-benefit analysis, informed by its knowledge of its community’s competing needs, values, and concerns. [Id. at 1129-113O.][10]
Courts should consider which jurisdiction has the greatest interest in establishing the legal standards that will be applied in the case.
In this case, Croatia has a stronger interest in determining whether the Croatian plaintiffs are entitled to relief as a result of an accident that occurred in Croatia than does Michigan. Croatia has a considerable interest in protecting its citizens from unsafe products. Michigan concomitantly has an interest in protecting its businesses and manufacturers from unwarranted liability.* [11] However, given that the manufacturer in this *630 case does not want Michigan’s protection,[12] Michigan’s interest in providing such protection seems significantly lessened. If defendant in these circumstances is amenable to subjecting itself to a Croatian court, it is not immediately apparent why a Michigan court should interfere with this result.
Fourth, on a related note, courts should also consider the sovereign interests of the state of Michigan in shaping the law within a particular substantive realm as compared to the foreign jurisdiction’s interests in this same regard. In this case, Michigan does have an interest in shaping the law with regard to automobile design defect cases given the importance of the automotive industry to the state of Michigan. However, Croatia has an interest in shaping the law with regard to automobile design defect cases as well, given the significant risks posed to its citizens from the use of defectively designed automobiles within its borders. Just as the United States should not, for example, impose its own standards regarding the safety of drugs onto foreign countries, the United States should not impose its standards regarding the safety of automobiles onto *631 foreign countries. Harrison, supra; Doe, supra. Michigan’s “ ‘generalized interest’ in regulating the flow of dangerously defective [Michigan automotive] products into the stream of world commerce cannot transcend [Croatia’s] ‘intensely local interest’ in adjudicating a controversy that profoundly affects its citizens.” Doe, supra at 1130.
Fifth, courts should consider the interests of the state of Michigan in either encouraging or discouraging future lawsuits in which the forum non conveniens doctrine may potentially be invoked.[13] That is, courts should consider the extent to which accommodating the instant lawsuit in Michigan will have consequences for the numbers and types of future lawsuits heard by Michigan courts.
In this case, Croatian plaintiffs are asking a Michigan court to determine whether, under Croatian law, they are entitled to any relief as a result of an accident that occurred in Croatia. If the trial court in this case abused its discretion by refusing to exercise its jurisdiction, one must consider whether every case involving an automobile designed or assembled in Michigan must be tried in Michigan if so desired by the plaintiff. If a Michigan court cannot refuse to exercise jurisdiction in cases brought by foreign plaintiffs for injuries arising out of automobile accidents occurring outside the United *632 States, Michigan will likely become the world’s automobile design defect courthouse. Because the Michigan judiciary is not equipped to handle all the world’s automobile design defect lawsuits along with all its other responsibilities, the trial court’s decision to dismiss this action on the basis of the forum non conveniens doctrine should be affirmed.
Sixth, courts should consider the interests of the state of Michigan in expending limited judicial and other resources in trying a case. As commentators have explained:
Courts that have granted forum non conveniens dismissals of actions brought by foreign plaintiffs have often cited to the burden that would be imposed on the American judicial system if it heard such actions. One primary justification for dismissing these actions is the view that it would be fundamentally unfair to permit foreign plaintiffs to use already backlogged American courts that are “paid for by U.S. taxpayers and whose juries are composed of U.S. citizens who are asked to drop their everyday activities to” help adjudicate an action. [Dunham & Gladbach, Forum non conveniens and foreign plaintiffs in the 1990s, 24 Brook J Int’l L 665, 689 (1999) (internal citation omitted).]
The United States Supreme Court has explained, “Qlury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.” Gulf Oil Corp v Gilbert, 330 US 501, 508-509; 67 S Ct 839; 91 L Ed 1055 (1947). That is, the people of Michigan have a civic obligation to serve as jurors, but it is an obligation that is predicated upon the idea that the people are serving the obligations of their own community. Jurors are being asked to inconvenience themselves, and divert time and attention from their families, their businesses, and their personal affairs in order to serve the larger community of which they are a part. This rationale for the juror obligation *633 becomes sharply attenuated where this state increasingly takes cognizance of lawsuits that cannot fairly be said to have arisen from within the community. It is not to be parochial to suggest that the people of Michigan have a primary interest in “Michigan cases,” cases that implicate the interests of Michigan and its people, cases in which there is a significant element of “Michiganness.” This indeed is the primary reason why the people of Michigan “earnestly desiring to secure these blessings undiminished to ourselves and our posterity,” Const of 1963, Preamble, have ordained our Constitution and established a court system to exercise the judicial power of their state. It is also to accord respect to the taxpayers of this state to recognize that their taxes should be employed only in support of a judicial system that primarily hears disputes arising from within this state.
In the instant case, plaintiffs are asking the Wayne Circuit Court to expend considerable time and resources to ascertain whether, under Croatian law, defendant is liable for the injuries that these Croatian plaintiffs suffered in an accident that occurred in Croatia. As in Piper, supra at 261, “[t]he American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.”
In summary, I believe that the following “public interest” factors (including the new factors, Nos. 4 through 9) should be considered when determining whether a case should be dismissed on the basis of the forum non conveniens doctrine:
1. Administrative difficulties that may arise in an area that may not be present in the area of origin;
*634 2. Consideration of the state law that must govern the case;
3. People who are concerned by the proceeding;
4. The extent to which it is appropriate for the state to enable a foreign plaintiff to avail himself or herself of the more favorable substantive law and procedural rules afforded by state courts in comparison with those of the plaintiffs own jurisdiction;
5. The extent to which resolving a particular legal dispute in a state court may compromise principles of judicial comity and undermine respect for the judicial sovereignty of a foreign jurisdiction;
6. The interests of the state in establishing and enforcing standards that domestic businesses and manufacturers must satisfy in selling their products abroad as compared to the foreign jurisdiction’s interest in establishing and enforcing standards that foreign businesses and manufacturers must satisfy in selling their products within its borders;
7. The interests of the state in shaping the law within a particular substantive realm as compared to the foreign jurisdiction’s interest in shaping the law within a particular substantive realm;
8. The extent to which accommodating the instant lawsuit in this state will have consequences for the numbers and types of future lawsuits heard by state courts;
9. The interests of the state in expending its limited judicial and other resources in trying a case.
This case is similar to Jemaa v MacGregor Athletic Products, 151 Mich App 273; 390 NW2d 180 (1986), in which the plaintiff was injured in Ohio while playing football. The plaintiff sued the defendant in Michigan, claiming that his injury was due to a defect in the *635 football helmet worn by the plaintiff. Although the defendant did business in Michigan, its design and manufacture of football helmets was done elsewhere. The trial court dismissed the case on the basis of the forum non conveniens doctrine. The Court of Appeals affirmed, explaining, “[N]either the plaintiff nor, apparently, the witnesses to the football accident reside in Michigan and the accident occurred in Ohio” and “ [although MacGregor does business in Michigan,... its Michigan business is not connected to the manufacturing of the football helmets.” Id. at 280. Likewise, in the instant case, plaintiffs do not reside in Michigan and the accident occurred in Croatia, and although defendant does business in Michigan, its Michigan business is not connected to the manufacturing of the transmission.
In Anderson v Great Lakes Dredge & Dock Co, 411 Mich 619, 631; 309 NW2d 539 (1981), a Florida plaintiff brought an action in Michigan pertaining to an incident that occurred in Florida. We held that “[t]he fact that virtually all the witnesses to the incident are apparently residents of Florida or nearby southern states reveals a likelihood that the defendant will suffer considerable difficulty in preparing any defense and is sufficient to overcome plaintiffs slight interest in having a trial in Michigan.” The vehicular accident at issue in this case occurred in Croatia, and, thus, the witnesses more than likely are residents of Croatia. It certainly would not be any easier to travel to Croatia to obtain witnesses than it would be to travel to Florida to obtain witnesses.
Plaintiffs argue that there were no witnesses to the accident in Croatia. However, as the trial court held, defendant should have an opportunity to confirm plaintiffs’ assertions. Defendant should not have to blindly rely on plaintiffs’ account of the accident. As the trial *636 court explained, “Plaintiffs want Defendant to accept Plaintiffs’ good faith on many matters, such as the lack of witnesses to the accident other than the vehicle’s occupants and the willingness of Plaintiffs to supply relevant documents, but Defendant will no doubt want to assess these matters itself and obtain the necessary documents first-hand, matters more easily done in Croatia.”
Plaintiffs argue that defendant has not established that a Michigan forum will be inconvenient because it has not established that there are any witnesses in Croatia that it will be deprived of if this case is tried in Michigan. In other words, plaintiffs argue that “any inconvenience to the defendant is speculative.” Anderson, supra at 630. However, as we held in Anderson, supra at 630-631, “[w]here, as here, there is little nexus between the litigation and the forum, there is no need for the defendant to prepare extensively for trial in order to show exactly how inconvenient a trial in Michigan would prove to be.”
For the reasons expressed both in the majority opinion and in this opinion, I concur in the majority’s conclusion that the trial court did not abuse its discretion in dismissing this case on the basis of the doctrine of forum non conveniens. I also submit that the “public interest” factors in the forum non conveniens test of this state should be expanded upon as suggested in this opinion.

 These contemporary realities include the growth of multinational corporations, the expanding realm of international free trade, and the increasing attractiveness of American courts to plaintiffs. Because an increasing number of American companies are doing business, and an increasing number of American products are being sold and used, throughout the world, an increasing number of foreign citizens are being injured by, and bringing lawsuits against, these companies. Such globalization is also reflected in the evolving nature of the legal profession and the growing presence of American law firms throughout the world. As one commentator has explained:
This century has seen the development of the large-scale multinational corporation (“MNC”), an entity whose transactions can span several continents and establish contacts with many nations. The growth of these businesses, along with procedural innovations in jurisdiction, has created an environment easily exploited by forum shopping plaintiffs seeking to recover large awards against MNCs. Generous in personam jurisdiction provisions often permit plaintiffs to sue defendant MNCs in several different state or federal courts, thereby providing plaintiffs with a broad choice of fora. This flexibility in choice of forum, coupled with significant pro-plaintiff elements in U.S. courts, has made the United States a particularly attractive forum for plaintiffs seeking to recover against MNCs.
As forum shopping in the United States has become more feasible and desirable, technological advances in transportation and an increase in transnational activity have increased the potential number of international suits that plaintiffs can bring in the United States. The result has been a dramatic increase in the number of international or foreign disputes brought in the United States against MNCs. American courts have responded, through certain procedural reforms and refinements, to the increase in forum shopping involving foreign plaintiffs. The most notable of these is an expansion of the old doctrine of forum non conveniens. [Comment, The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs, 19 U Pa J Int’l Econ L 141, 141-142 (1998).]

 As Lord Denning, former Master of the Rolls (the senior civil judge in the Court of Appeal of England and Wales), has said:
As a moth is drawn to the light, so is a litigant drawn to the United States. If he can only get his case into their courts, he stands to win a fortune. At no cost to himself, and at no risk of having to pay anything to the other side. [Smith Kline & French Laboratories Ltd v Block, 2 All ER 72, 74 (1983).]

 “Sometimes, a plaintiff engaged in litigation in a civil-law country will go so far as to institute a second action here, without intending to bring the case to trial in our courts, but merely for the purpose of obtaining the advantage of American-style discovery.” Schlesinger, Comparative Law: Cases — Text—Materials, p 400 (4th ed, 1980).

 “[F]or the indigent foreign plaintiff whose access to local courts is impeded by prohibitive filing fees and the absence of any viable legal aid program, representation on a contingency fee basis constitutes a genuine advantage, sufficient in itself to direct the plaintiff toward the courts of the United States.” Note, Foreign plaintiffs and forum non conveniens: Going beyond Reyno, 64 Tex L R 193, 199 (1985).

 “Outside the United States and Canada, recovery of punitive damages in wrongful death cases is uncommon, if not unknown.” Note, Foreign plaintiffs and forum non conveniens: Going beyond Reyno, 64 Tex L R 193, 203 (1985).

 These commentators noted:
In the 1990s, foreign plaintiffs have commenced product liability actions in the United States with increasing frequency. Citizens of the *621 United Kingdom have filed suit in New York against American and British tampon manufacturers alleging that design defects in the product caused toxic shock syndrome and resulted in the death of a family member. Nurseries located in Jamaica and Costa Rica have brought strict products liability claims in Florida against the American manufacturers and sellers of a pesticide that allegedly had damaged or destroyed their crops. An Irish citizen brought suit in New York against several U.S. manufacturers claiming that he contracted HIV [human immunodeficiency virus] due to contaminated blood clotting products caused by defective manufacturing and processing. Numerous women from Australia, Canada, and England brought actions in Alabama alleging, inter alia, strict products liability against American corporate defendants for design and manufacturing defects related to breast implants. [Id. at 665.]
Another commentator, writing about the litigation involving Union Carbide and the Bhopal, India, gas leak disaster, has written:
The United States continues to attract the international forum-shopping plaintiff. The trend is readily discernible in the field of personal injury. If the plaintiff can name an American defendant over whom jurisdiction can be constitutionally asserted in the United States, litigation in the American forum almost inevitably ensues. Examples abound: Victims of air crashes in Scotland, Taiwan, India, and Saudi Arabia elect to vindicate their rights in the federal courthouses of the United States. E.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981); Cheng v. Boeing Co., 708 F.2d 1406 (9th Cir.), cert. denied, 104 S. Ct. 549 (1983); In re Disaster at Riyadh Airport, Saudi Arabia, 540 F. Supp. 1141 (D.D.C. 1982); In re Air Crash Disaster Near Bombay, India, 531 F. Supp. 1175 (WD. Wash. 1982). The daughters of British citizens who ingested drugs made, marketed, and sold by the British subsidiary of an American pharmaceutical company sued the latter in the Southern District of Ohio. In re Richardson-Merrell, Inc., 545 F. Supp. 1130 (S.D. Ohio 1982), aff’d sub nom. Dowing v. Richardson-Merrell, Inc., 727 F.2d 608 (6th Cir. 1984). The representatives of a Nigerian citizen injured off the coast of Nigeria while working on a drilling rig operated by the Nigerian subsidiary of a Delaware-owned Bahamian corporation filed suit in the Eastern District of Louisiana. Chiazor v. Transmorid Drilling Co., 648 F.2d 1015 (5th Cir.), cert. denied, 455 U.S. 1019 (1981).
What these and similar cases have in common is the presence of foreign plaintiffs, presumably unfamiliar with the laws of this *622 country, injured abroad by the allegedly tortious conduct of American defendants, choosing to forego their own nations’ court systems in favor of ours. Bhopal is merely the latest example of this phenomenon. [Note, Foreign plaintiffs and forum non conveniens: Going beyond Reyno, 64 Tex L R 193, n 14 (1985).]

 As one commentator has observed:
[T]he United States has no equal with regard to the size of a possible recovery. One British judge observed that “in the United States the scale of damages for injuries of the magnitude sustained by the plaintiff is something in the region of ten times what is regarded as appropriate by... the courts of [England].” A comparative legal scholar writing more than ten years ago made a rather detailed comparison of the maximum awards of damages reported by countries throughout the northern hemisphere and concluded, “[T]he USA... is in a class of its own.” The difference becomes even more dramatic if one compares the United States with a Third World country. [Note, Foreign plaintiffs and forum non conveniens: Going beyond Reyno, 64 Tex L R 193, 203-204 (1985) (internal citations omitted).]

 This commentator noted additional reasons why the United States constitutes an attractive forum: (1) “contingency fees make litigation more accessible to indigent plaintiffs and provide risk averse plaintiffs with a form of insurance”; (2) “[t]he so-called ‘American system’ in which the losing party does not have to pay the expenses of the winner also reduces plaintiffs’ risks in litigation and encourages risk averse plaintiffs to sue in the United States”; (3) “[l]iberal pleading rules used by most courts in the United States allow plaintiffs to enter court with vague claims”; (4) “[e]xtensive pre-trial discovery benefits plaintiffs by allowing them to initiate proceedings with little evidence and to acquire evidence that might otherwise be unavailable” and “discovery greatly increases defendants’ litigation costs and improves plaintiffs’ bargaining positions in settlement negotiations”; (5) “class actions and other procedures allowed in U.S. courts decrease the economic costs of large-scale litigation and subsequently allow large groups of individual plaintiffs, each with little monetary interest in the dispute, to bring suit against a defendant.” Id. at 148-149.

 The United States Supreme Court explained that the following factors make the United States “extremely attractive to foreign plaintiffs”:
First, all but 6 of the 50 American States— Delaware, Massachusetts, Michigan, North Carolina, Virginia, and Wyoming— offer strict liability. 1 CCH Prod. Liability Rep. § 4016 (1981). Rules roughly equivalent to American strict liability are effective in France, Belgium, and Luxembourg. West Germany and Japan have a strict liability statute for pharmaceuticals. However, strict liability remains primarily an American innovation. Second, the *624 tort plaintiff may choose, at least potentially, from among 50 jurisdictions if he decides to file suit in the United States. Each of these jurisdictions applies its own set of malleable choice-of-law rules. Third, jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions. G. Gloss, Comparative Law 12 (1979); J. Merryman, The Civil Law Tradition 121 (1969). Even in the United Kingdom, most civil actions are not tried before a jury. 1 G. Keeton, The United Kingdom: The Development of its Laws and Constitutions 309 (1955). Fourth, unlike most foreign jurisdictions, American courts allow contingent attorney’s fees, and do not tax losing parties with their opponents’ attorney’s fees. R. Schlesinger, Comparative Law: Cases, Text, Materials 275-277 (3d ed, 1970); Orban, Product Liability: A Comparative Legal Restatement — Foreign National Law and the EEC Directive, 8 Ga. J. Int’l & Comp. L. 342, 393 (1978). Fifth, discovery is more extensive in American than in foreign courts. R. Schlesinger, supra, at 307, 310, and n. 33. [Piper, supra at 252 n 18.]
One commentator has stated:
Commentators generally agree that the following factors encourage plaintiffs to sue in the United States: the availability of contingency fees, absence of fee shifting, jury trials and the tendency of American juries to award high damages, extensive pre-trial discovery, choice of different state forums with differing choice of law rules, and favorable American substantive law, including strict liability and possibility of punitive damages, possibility of class action suits, low court filing fees, and the sophistication of American lawyers and courts. [Comment, The forum non conveniens doctrine and the judicial protection of multinational corporations from forum shopping plaintiffs, 19 U Pa J Int’l Econ L 141, n 37 (1998).]

 The Sixth Circuit Court of Appeals has likewise held that “the country where the injury occurred has a greater interest in the ensuing products liability litigation than the country where the product was manufactured.” Kryvicky v Scandinavian Airlines Sys, 807 F2d 514, 517 (CA 6, 1986).

 As one observer has explained:
The ... problem of regulating the conduct of U.S. MNCs in foreign countries is that the United States would, in effect, be exporting its laws, policies, and social mores and imposing them on sovereign foreign nations. While the Court in Piper recognized that the United States has an interest in regulating its companies’ *630 conduct abroad, the Court declined to give significant weight to this interest. [Comment, International forum non conveniens: “Section 1404.5” — A proposal in the interest of sovereignty, comity, and individual justice, 45 Am U L R 415, 456 (1995).]

 It seems worthy of comment that here, as in Davidson v Daimler-Chrysler Motors Co, a case being held in abeyance for this case, unpublished order of the Supreme Court, entered June 10, 2005 (Docket No. 126556), a company that was born in this state, that has grown to worldwide influence from within this state, that has been a part of the community of this state for more than three-quarters of a century, that has participated actively in the civic affairs of this state, that has given employment to hundreds of thousands of workers within this state, and that in countless ways has enriched the economy and social environment of this state, should prefer to have its disputes decided in Croatian (or Canadian) courts rather than in Michigan courts.

 One commentator has noted:
Courts not only consider the actual effect on the docket of shouldering the foreign plaintiffs claim, they also tend to be swayed by “floodgates” arguments. Proponents of the doctrine assert that not exercising forum non conveniens would constitute an open invitation to make U.S. courthouses a “dumping ground” for international claims. [Comment, International forum non conveniens: “Section 1404.5” — A proposal in the interest of sovereignty, comity, and individual justice, 45 Am U L R 415, 448 (1995).]