# STATE OF MICHIGAN

# COURT OF APPEALS

LUZVIMINDA LANURIAS, BROOKS
NEUROLOGICAL PRACTICES, TIMELY
TRANSPORTATION, LLC,

       Plaintiffs-Appellants,

and

LEVEL ONE HOME CARE, INC.,

       Plaintiff/Counter-defendant-
       Appellant,

and

SAUNDERS DORSEY,

       Plaintiff/Counter-defendant,

v

PROGRESSIVE INSURANCE COMPANY,

       Defendant/Counter-plaintiff-
       Appellee.

UNPUBLISHED
October 18, 2016

No. 327435
Wayne Circuit Court
LC No. 12-011562-CZ

Before: MURRAY, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

Plaintiffs, Luzviminda Lanurias, Brooks Neurological Practices ("BNP"), Timely Transportation, LLC ("Timely Transportation"), and Level One Home Care, Inc. ("Level One") appeal as of right an order granting sanctions under MCL 500.3148(2) to defendant, Progressive Insurance Company.[1] We affirm.

---

[1] We note that the order appealed from separately lists Progressive Insurance Company and Progressive Michigan Insurance Company as defendants. However, the appearance filed with

-1-

## I. FACTS

This case arises out of Lanurias's[2] alleged injuries and claim for no fault benefits stemming from a car accident that occurred on July 27, 2011. Lanurias was involved in a car accident when she was driving her car and another driver failed to stop at a stop sign. As a result of the accident, Lanurias was taken to the hospital.

According to Lanurias, she was in pain after the accident and did not have medical insurance (and did not know no-fault benefits under her husband's no-fault policy with defendant would pay for medical care arising out of her car accident), so she asked her friend Ana Lou Brooks ("Ana Lou") for help. Ana Lou, a case manager for a case management company, Brooks Neurological Practices ("BNP"), which was owned by her husband Harvey Brooks ("Harvey"), discussed the car accident and possible treatment options with Lanurias. Thereafter, BNP began providing case management services to Lanurias.

As part of the case management services, BNP referred Lanurias to Level One, a company that provides home healthcare to patients injured in automobile accidents, which is owned by Harvey's longtime friend Saunders Dorsey. BNP also recommended that Lanurias use Carla Aikens, Dorsey's daughter, as an attorney. Aikens is also the owner of Timely Transportation, a business that provides transportation for medical appointments.

Level One and Timely Transportation began providing services to Lanurias. In fact, Level One agreed with Abdullah Haqq to pay him $1,085 per month[3] for providing six to eight hours of attendant care services for Lanurias per day and $20 a day for performing replacement household services. It was explained to Haqq that in order for him to get paid for performing the services, he was required to keep a log of the services he performed for Lanurias.

On August 5, 2011, BNP requested that defendant pay for case management, attendant care, and transportation services. In response to the request, defendant sent an investigation letter, because (1) defendant had not yet received Lanurias's medical records and (2) Lanurias indicated she did not plan on getting these services in earlier communications with defendant.

Over the next few months, Haqq received preprinted forms from Level One that indicated he performed various services for Lanurias, even though he did not perform them. Haqq even received preprinted forms indicating he performed various services when he was actually in Japan. In addition, Haqq received preprinted forms for periods of the time that were in the future. Haqq acknowledged that the services performed and the time expended on services indicated on the attendant care logs were inaccurate, but signed the forms because Level One

---

this Court by defendant's attorney only lists Progressive Insurance Company as defendant, and no other pleadings, filings, or briefs indicate that Progressive Michigan Insurance Company is a separate defendant in the instant action.

[2] Lanurias was born in the Phillipines and moved to Michigan in 2001, and her first language is Tagalog.

[3] $35 a day.

told him to.[4]  Moreover, the preprinted forms indicated that Haqq was a supervised caregiver and that Nikki Ford, an employee of Level One, was the nurse supervisor.

After Haqq signed the forms, he would send them to Level One and Ford would review the service logs.  Ford never verified that the services indicated on the forms were actually provided, nor did she supervise Haqq when he performed the services.  Nevertheless, Ford would sign the forms and send them to Dorsey.  Dorsey in turn submitted bills to defendant for payment.  Initially, Level One billed defendant $28,182, or $462 a day, for the attendant care services incurred in the first billing cycle.

Adam Rybicki, a claims representative for defendant, thought the charge of $462 a day was unreasonable, so he negotiated with Dorsey to a rate of $195 a day.  In total, defendant paid Level One $21,450.   Rybicki testified that he would not have paid that amount if he knew Haqq only spent 75 minutes performing services a day or if he knew that Ford was not supervising Haqq.

For the month of August, 2011, BNP billed defendant $2,250 (25 hours at $90 an hour) for case management services rendered on behalf of Lanurias.  Defendant refused to pay BNP for case management services because (1) Lanurias's reason for needing case management services (getting faster service) was unreasonable and (2) a case manager was not necessary to help translate for Lanurias as Karen Barney, Lanurias's case manager, did not speak Tagalog, and defendant would have simply paid for Lanurias to have a translator if one was needed.

As a part of defendant's investigation,[5] Rybicki set up an independent medical examination as he was suspicious of the nature and seriousness of Lanurias's claimed injuries.  Defendant received the independent medical examination report created by Dr. Vikram Narula, and according to the report, attendant care and household services were not required for Lanurias.  As a result, defendant sent a letter to Lanurias terminating her attendant care and household services.[6]

Plaintiffs filed a complaint on March 9, 2012, alleging that defendant failed to pay for attendant care, transportation, case management, and household replacement services rendered by Level One, BNP and Timely Transportation.  Plaintiffs subsequently amended their complaint to add a cause of action for unpaid underinsured motorist benefits.[7]

---

[4] The preprinted forms indicated he spent 7 hours and 45 minutes each day providing services for Lanurias, while he really only spent about an hour and fifteen minutes.

[5] Rybicki investigated Lanurias's case more thoroughly because he thought it was odd Lanurias was claiming case management, attendant care, and transportation services when she only suffered soft tissue injuries.

[6] Transportation services were not terminated until January 24, 2012.  Despite the fact that benefits were terminated, Timely Transportation continued to submit bills to defendant because Lanurias was still using transportation services.

[7] The parties agreed to settle this claim.

In response, defendant filed a counterclaim against Level One and Dorsey for (1) fraud, (2) innocent misrepresentation, (3) unjust enrichment, and (4) "payment under mistake of fact." Specifically, defendant alleged that Level One knew it was billing Progressive for services that were either not rendered or not supervised, as indicated on the attendant care logs. Defendant subsequently amended its counterclaim and sought to pierce Level One's corporate veil and hold Dorsey personally liable for Level One's obligations.

After several discovery issues, Level One and Dorsey filed a motion for summary disposition brought under MCR 2.116(C)(8) and (C)(10) on defendant's counterclaims. First, Level One and Dorsey argued that they were entitled to summary disposition on defendant's fraud and innocent misrepresentation claims because defendant failed to identify a material misrepresentation made by Level One and that defendant did not rely on any alleged misrepresentations. Level One and Dorsey also argued that defendant failed to state a claim for unjust enrichment and payment under mistake of fact.

Subsequently, defendant filed its own motion for summary disposition with regard to its counterclaims, arguing that no genuine issue of material fact existed regarding whether Level One and Dorsey committed fraud as evidence was presented that Level One represented to defendant that services were being provided with the supervision of Ford, when they were not. Defendant also argued it was entitled to summary disposition on its claim for innocent representation because it relied on the false representations on the hourly attendant care logs when making payments to Level One. Lastly, defendant argued summary disposition should be granted in its favor on its unjust enrichment claim because Level One received a $21,450 benefit at the expense of defendant.[8]

Defendant then moved for summary disposition on plaintiffs' claim for replacement services and argued that consistent with MCL 500.3107(c), replacement services are payable only when they are *incurred*, which occurs when the obligation or agreement to pay services arises. Defendant opined there was no such obligation or agreement to pay for the services as Haqq testified that he did not expect to be paid for providing the replacement services.

In response, plaintiffs argued that a genuine issue of material fact existed regarding whether the replacement services were incurred because Haqq testified that he expected to get paid for performing household replacement services. Plaintiffs argued that charges are incurred by various means, including entering into a contract for services. Citing Haqq's testimony, defendant replied by asserting that Haqq only had an expectation to be paid by Level One for replacement services, but did not have an expectation to be paid by his wife, Lanurias, which was required to be entitled to replacement services.

With regard to plaintiffs' claim for replacement services, the trial court granted summary disposition to defendant, concluding that there was no genuine issue of material fact that the

---

[8] Defendant also filed a response to Level One and Dorsey's motion for summary disposition, asserting that it was entitled to summary disposition pursuant to MCR 2.116(I)(2) on all of its counterclaims.

replacement services were incurred because Haqq did not have an expectation of compensation. The trial court also denied both parties' motions for summary disposition with regard to defendant's counterclaims, stating that a genuine issue of material fact existed regarding whether Level One committed fraud.[9]

The case proceeded to trial and after the parties presented their evidence, the jury found that Lanurias was not injured from the motor vehicle accident and therefore the jury did not reach the questions of whether plaintiffs incurred allowable expenses, work loss, or reasonably incurred replacement services. The jury also found that Level One committed fraud and awarded defendant $21,450. The trial court subsequently entered a judgment reflecting the jury's verdict.

After the verdict, plaintiffs' filed a motion for judgment notwithstanding the verdict, new trial, and remittitur. The trial court denied plaintiffs' motion for a new trial and remittitur. The trial court determined that the jury verdict reflecting that Lanurias was not injured and that Level One committed fraud was supported by competent evidence and not against the great weight of the evidence. In upholding the jury's verdict, the trial court noted that it was the jury that was required to make credibility determinations, not the court.

Thereafter, defendant filed a motion for case evaluation sanctions pursuant to MCR 2.403(O) and attorney fees pursuant to MCL 500.3148(2). At the motion hearing, the court found that plaintiffs' case was "fraudulent in many respects, not just some respects" and that the case "was so excessive as to have no reasonable foundation." The court found that the interrelationship between the plaintiffs indicated that they intended to commit fraud on defendant. The court granted defendant's request for case evaluation sanctions in the amount of $55,000 and defendant's request for sanctions under MCL 500.3148 in the amount of $20,000. This appeal ensued.

## II. ANALYSIS

### A. SUMMARY DISPOSITION—DEFENDANT'S COUNTERCLAIMS

Plaintiffs first assert that the trial court erred when it denied their motion for summary disposition on defendant's counterclaims. It is unclear which court rule the trial court based its decision on, but because the trial court relied on documentary evidence, we will review its decision under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party. *Id*. "Summary disposition under MCR 2.116(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Rose v Nat'l Auction Group*, 466 Mich 453, 461; 646 NW2d 455 (2002). A genuine issue of material fact exists when the record

---

[9] The trial court did not address the defendant's other counterclaims on the record.

leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

The first cause of action contained in defendant's countercomplaint is a cause of action for fraud. To properly establish fraud, a plaintiff must prove that:

> (1) the defendant made a representation that was material, (2) the representation was false, (3) the defendant knew the representation was false, or the defendant's representation was made recklessly without any knowledge of the potential truth, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff actually acted in reliance, and (6) the plaintiff suffered an injury as a result. [*Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 230; 859 NW2d 723 (2014).]

At the time the motion was decided, a genuine issue of material fact existed regarding whether Level One committed fraud. Evidence was presented that Level One submitted for payment attendant care logs that indicated Haqq was a "supervised caregiver" and that Nikki Ford was the "nurse supervisor." Level One additionally made the representation in its billing invoices that Level One's daily billing rate included "RN supervision." A reasonable jury could determine that those material representations were false as Ford's testimony established that she merely reviewed the attendant care logs and signed them, but did not actually supervise Haqq while he provided attendant care services. Additionally, viewing the evidence and reasonable inferences in the light most favorable to defendant, a reasonable jury could conclude that Dorsey, the person in charge of Level One's billing, knew that the representations were false and that he intended defendant to act on them in order to make a substantial profit for Level One. Furthermore, Rybicki's testimony indicates that defendant acted upon Level One's representation as Rybicki testified that he relied on the representations in the billing statements and attendant care logs when negotiating a daily rate to pay for the services rendered and defendant suffered injury as a result of the misrepresentations as it issued payments in the amount of $21,450 for attendant care services. Accordingly, genuine issues of material fact existed regarding whether Level One committed fraud.[10]

---

[10] Plaintiffs also argue that the trial court erred when it denied their motion for summary disposition on the remainder of defendant's counterclaims of (1) innocent misrepresentation, (2) unjust enrichment, (3) and payments under mistake of fact. Because the question of liability on defendant's fraud theory was properly submitted to the jury, and these other theories of liability were not, it is unnecessary to resolve whether the trial court erred in denying plaintiffs' motion for summary disposition on these remaining issues. "This Court's duty is to consider and decide actual cases and controversies." *Morales v Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003). We generally do not address moot questions or declare legal principles that have no practical effect in a case. *Id.* "An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (citation omitted). Resolving the issue of whether the trial court erred in denying plaintiffs' motion for summary disposition

## B. GREAT WEIGHT OF THE EVIDENCE

Plaintiffs next argue that the trial court erred when it denied their motion for new trial because the verdict was against the great weight of the evidence. "This Court reviews a trial court's decision on a motion for . . . a new trial for [an] abuse of discretion." *Taylor v Kent Radiology, PC*, 286 Mich App 490, 524; 780 NW2d 900 (2009). A court abuses its discretion when its decision falls outside the range of principled outcomes. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). "A trial court's determination that a verdict is not against the great weight of the evidence will be given substantial deference by the appellate court." *Arrington v Detroit Osteopathic Hosp Corp (On Remand)*, 196 Mich App 544, 560; 493 NW2d 492 (1992). The jury's verdict should not be set aside if there is competent evidence to support it; the trial court cannot substitute its judgment for that of the factfinder unless the record reveals a miscarriage of justice. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 194; 600 NW2d 129 (1999). "The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left for the factfinder." *Dawe v Dr Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010).

"Under the terms of the no-fault act, a *person injured in a motor vehicle accident* is entitled to recover personal protection insurance (PIP) benefits for '[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.' " *Douglas v Allstate Ins Co*, 492 Mich 241, 247; 821 NW2d 472 (2012), citing MCL 500.3107 (emphasis added). Here, the jury found that Lanurias was not injured in the motor vehicle accident.

Plaintiffs argue that the verdict was against the great weight of the evidence because the jury found that plaintiffs did not suffer any injures from the accident. Plaintiffs specifically assert that the medical evidence clearly showed that Lanurias suffered injury in the motor vehicle accident. Plaintiffs rely on the testimony of Dr. Yari Campbell and Dr. Nilofer Nisar that Lanurias was injured and needed additional treatment. While there was sufficient evidence for a jury to find that Lanurias was injured in the motor vehicle accident, competent evidence supports the jury's finding that she was not injured. First, evidence was presented that Lanurias left the hospital alert and under her own power the same day as the accident and later called defendant to inform them of her accident and her injuries. When making the call, Lanurias described her injuries to Kara Damm, a claim representative for defendant, as a soft tissue strain of the neck and injuries to her back, knee, and *left* arm, and noted that she was not planning on any follow up care. But, when she visited Dr. Campbell, Lanurias then complained of *right* arm pain and weakness, indicating to the jury that her injuries could have been fabricated and she could not keep her story straight. Second, the MRIs of Lanurias's brain and spine revealed no injuries related to the motor vehicle accident. Moreover, Dr. Narula reviewed Lanurias's medical records from the emergency room and opined that they did not support her complaint of injuries. Dr. Narula explained that Lanurias's complaints of pain were subjective in nature, and could not

on defendant's counterclaims of (1) innocent misrepresentation, (2) unjust enrichment, (3) and payments under mistake of fact would have no practical effect on the controversy as those causes of action were not submitted to the jury. Stated differently, even if the trial court did err in denying plaintiffs' motion, this Court would be unable to grant any relief to plaintiffs.

be verified with an objective injury. Thus, the jury could have found that Lanurias was not injured in a motor vehicle accident.

Plaintiffs also argue that the jury's finding that Level One committed fraud was against the great weight of the evidence. As stated previously, the elements of fraud are:

(1) the defendant made a representation that was material, (2) the representation was false, (3) the defendant knew the representation was false, or the defendant's representation was made recklessly without any knowledge of the potential truth, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff actually acted in reliance, and (6) the plaintiff suffered an injury as a result. [*Stephens*, 307 Mich App at 230.]

The jury's verdict that Level One committed fraud is not against the great weight of the evidence. Haqq testified that he received preprinted forms from Level One that indicated that he had performed services, even though he testified that he did not perform all the services indicated and that he did not spend as much time performing services as indicated on the forms. In fact, Haqq testified that he even received preprinted forms indicating he performed services while he was away in Japan. Haqq acknowledged that the attendant care logs were inaccurate, but signed them anyway because he was told to do so by Level One. Furthermore, Dorsey, who was in charge of billing the insurance companies, admitted that he never looked at the attendant care logs before submitting them to defendant for payment. Thus, at the very least, Level One's representation that services were being performed was made recklessly without knowledge of the potential truth. *Id*. The verdict is not against the great weight of the evidence as competent evidence supported the jury's finding.

## C. SANCTIONS

Plaintiffs next assert that the trial court erroneously granted case evaluation sanctions and sanctions under MCL 500.3148(2). We will address each of plaintiffs' arguments in turn.

The decision to grant or deny case evaluation sanctions under MCR 2.403 is reviewed de novo. *Allard v State Farm Ins Co*, 271 Mich App 394, 397; 722 NW2d 268 (2006). The amount of case evaluation sanctions is reviewed for an abuse of discretion. *Ayre v Outlaw Decoys, Inc*, 256 Mich App 517, 520; 664 NW2d 263 (2003).

MCR 2.403(O)(1) provides:

If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

A verdict includes a jury verdict. MCR 2.403(O)(2). Whether "the verdict is more favorable" to a party is determined after appropriate adjustments are made to the verdict. MCR 2.403(O)(3). However, in cases involving multiple parties, MCR 2.403(O)(4)(a) provides:

Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties.

Here, it is undisputed that the case evaluation award was $500 in favor of Lanurias against defendant, $0 in favor of Timely Transportation against defendant, $500 in favor of BNP against defendant, and $0 in favor of Level One against defendant. It is also undisputed that all plaintiffs rejected their respective awards. Clearly, the verdict was not more favorable to any of the plaintiffs, as the jury made a finding that Lanurias was not injured in the motor vehicle accident, meaning that none of the plaintiffs recovered from defendant. Because the verdict was not more favorable to plaintiffs than their respective case evaluation awards, defendant was entitled to case evaluation sanctions.

With regard to plaintiffs' argument that sanctions under MCL 500.3148(2) were inappropriate, we decline to address this argument as it was not contained in plaintiffs' questions presented. "It is well established that this Court will not ordinarily review questions not separately stated in the statement of the questions presented for review" as "[t]he court rules require that a brief contain a 'statement of questions involved.' " *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 717 n 98; 473 NW2d 268 (1991). Because this issue was not contained in plaintiffs' questions presented, we decline to address plaintiffs' claim of error.[11]

## D. PLAINTIFFS' MOTION TO BIFURCATE TRIALS

Plaintiffs argue that the trial court abused its discretion when it denied their motion to bifurcate trials. A trial court's decision to bifurcate a trial is reviewed for an abuse of discretion. *LeGendre v Monroe Co*, 234 Mich App 708, 719; 600 NW2d 78 (1999).

MCR 2.505(B) provides:

Separate Trials. For convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, the court may order a separate trial of one or more claims, cross-claims, counterclaims, third-party claims, or issues.

Thus, MCR 2.505(B) allows a trial court to sever a trial to avoid prejudice or when severance would be conducive to expedition and economy. *LeGendre*, 234 Mich App at 719. This Court has held that separate trials "should be ordered only upon the most persuasive showing that the convenience of all parties and the court requires it." *Id*.; *Hodgins v Times Herald Co*, 169 Mich App 245, 261; 425 NW2d 522 (1988). While a court may sever trials to avoid prejudice, when prosecution of claims will require almost identical evidentiary proof, a motion to bifurcate should not be granted. *Jemaa v MacGregor Athletic Products*, 151 Mich App 273, 279; 390 NW2d 180 (1986).

---

[11] In any event, the trial court did not clearly err in awarding sanctions under MCL 500.3148(2), and those sanctions were not duplicative of the case evaluation sanctions.

The allegations and testimony with regard to both plaintiffs' claims and defendant's counterclaims revolved around the same set of facts and circumstances—the no-fault benefits requested by Lanurias. Thus, substantially similar proofs and the same witnesses would have been introduced in each case. *LeGendre*, 234 Mich at 720; *Jemaa*, 151 Mich App at 279. Therefore, the trial court did not abuse its discretion when it denied plaintiffs request to bifurcate trials. *Id*.

## E. REMITTITUR

Plaintiffs also take issue with the trial court's denial of plaintiffs' motion for remittitur. A trial court's decision to grant or deny a motion for remittitur is reviewed for an abuse of discretion. *Palenkas v Beaumont Hosp*, 432 Mich 527, 533; 443 NW2d 354 (1989).

> The power of remittitur should be exercised with restraint. When deciding whether to grant a motion for remittitur, the trial court must examine all the evidence in the light most favorable to the nonmoving party to determine whether the evidence supported the jury's award. If the award falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation, it should not be disturbed. [*Taylor*, 286 Mich App at 523 (internal quotation marks and citations omitted).]

In determining whether the jury award was supported by the evidence, a trial court must look to "objective criteria relating to the actual conduct of the trial or the evidence presented." *Silberstein v Pro-Golf of Am, Inc*, 278 Mich App 446, 462; 750 NW2d 615 (2008). These objective criteria include: "(1) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; (2) whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; and (3) whether the amount actually awarded is comparable with awards in similar cases both within the state and in other jurisdictions." *Freed v Salas*, 286 Mich App 300, 334; 780 NW2d 844 (2009).

It is clear from the evidence at trial that the measure of damages was properly limited to the amount defendant paid Level One. There is no evidence that the verdict was the result of "improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact." Instead, damages were based the actual amount defendant paid to Level One for the misrepresented attendant care services allegedly performed. Plaintiffs contend the verdict should be reduced because Haqq still provided some attendant care services to Lanurias, although not as much as initially indicated on the attendant care logs. However, consistent with the jury's verdict, Lanurias was not injured in the car accident, meaning that she was not entitled to no-fault insurance benefits, including attendant care services. *Douglas*, 492 Mich at 247. Thus, the verdict should not be offset by any services Haqq did provide, because, according to the jury, Lanurias was not entitled to no-fault benefits.

## F. MOTIONS IN LIMINE

Plaintiffs next argue that the trial court abused its discretion when it denied five motions in limine. However, we deem these assertions of error abandoned. Plaintiff merely asserts that the trial court erred when it denied plaintiffs' motions in limine, without citation to any case law,

without discussing the circumstances of the motions, and without providing any argument on appeal. "When an appellant fails to dispute the basis of the trial court's ruling, this Court . . . need not even consider granting plaintiffs the relief they seek.' " *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 381; 689 NW2d 145 (2004), quoting *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997). Further, "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).[12]

## G. ATTORNEY-CLIENT PRIVILEGE

Plaintiffs assert that the trial court erred in concluding that two claims adjusters' notes that were inadvertently turned over to plaintiffs' counsel were protected by the attorney-client privilege. In doing so, however, plaintiffs' argument on appeal focuses on the admissibility of the documents and fails to address how the trial court erred in determining that the documents were not privileged. Specifically, plaintiffs rely on *Central Fabricators, Inc v Big Dutchman*, 398 Mich 352; 247 NW2d 804 (1976), for the proposition that the claim notes are admissible under the business records hearsay exception. Plaintiffs' reliance on *Central Fabricators* is misplaced as the issue of whether the claim notes are admissible under the business records exception has no bearing on whether those same notes are protected by the attorney-client privilege.

MRE 501 provides that "[p]rivilege is governed by the common law, except as modified by statute or court rule." Michigan has long recognized the common-law privilege extending to communications between a client and an attorney. See, e.g., *Passmore v Passmore's Estate*, 50 Mich 626, 627; 16 NW 170 (1883). "The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents." *Reed Dairy Farm*, 227 Mich App at 618. "The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice." *Id*. at 618-619.

Here, the two documents at issue contained notes regarding conversations defendant had with its attorney. In fact, the January 25, 2013 note contained discussions of settlement and trial strategy. Clearly, this is protected by the attorney-client privilege as it contains legal advice to the client. See *Leibel v General Motors Corp*, 250 Mich App 229, 239; 646 NW2d 179 (2002). Since the claim notes at issue contained discussions between defendant and its attorney, the trial court did not err in concluding that the claims notes were protected by the attorney client privilege.

## H. REPLACEMENT SERVICES

---

[12] Nor is it proper briefing for plaintiffs to seek to "incorporate by reference" pleadings from the trial court into the brief on appeal. See *Ile v Foremost Ins Co*, 293 Mich App 309, 328-329; 809 NW2d 617 (2011), rev'd on other grds by 493 Mich 915 (2012).

Plaintiffs next assert that the trial court erred when it granted defendant's motion for summary disposition on plaintiffs' claim for replacement services. Even assuming—without deciding—that the trial court erred when it granted summary disposition in favor of defendant, any error was harmless as the jury found that Lanurias was not injured in the motor vehicle accident, meaning that she was not entitled to no-fault benefits, including household replacement services. See *Zdrojewski v Murphy*, 254 Mich App 50, 68; 657 NW2d 721 (2002) ("[E]ven if the trial court erred in denying the motion for summary disposition, the error was rendered harmless" because "[a]n error in a ruling or order is not a ground for setting aside a verdict or disturbing a judgment unless failure to do so would be inconsistent with substantial justice."). Thus, even if we were to reverse the trial court's grant of summary disposition, plaintiffs would not be entitled to any relief as the jury found Lanurias was not injured.

## I. INVALID ORDERS

Lastly, plaintiffs claim that the trial court erred when it entered orders in violation of MCR 2.602(B). "Interpretation of a court rule is a question of law this Court reviews de novo." *Wilcoxon v Wayne County Neighborhood Legal Services*, 252 Mich App 549, 553; 652 NW2d 851 (2002).

MCR 2.602(B) provides:

An order or judgment shall be entered by one of the following methods:

(1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.

(2) The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision.

(3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the original of the proposed judgment or order and proof of its service on the other parties.

(a) If no written objections are filed within 7 days, the clerk shall submit the judgment or order to the court, and the court shall then sign it if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.

(b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.

(c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

(4) A party may prepare a proposed judgment or order and notice it for settlement before the court.

Here, defendant would submit orders, without the approval of plaintiffs or providing notice of the order to plaintiffs, to the trial court to sign at the time of the motion hearing. However, the trial court would not sign the orders "at the time it grant[ed] the relief provided by the . . . order," MCR 2.602(B), but instead, the trial court would sign the order up to one week after the order was submitted. Thus, the trial court did not sign the orders "at the time it granted relief." MCR 2.602(B). In addition, because plaintiffs did not approve the orders, or receive notice of the orders, the trial court's orders were entered in violation of MCR 2.602(B). While the trial court's practice was a violation of MCR 2.602, reversal is not required as plaintiffs have failed to establish prejudice as the trial court found that all of the orders that were entered in this case were consistent with its rulings. See *Longworth v Michigan Dep't of Hwys and Transportation*, 110 Mich App 771, 778-779; 315 NW2d 135 (1981) (Violation of a court rule will not necessarily warrant reversal unless the violation prejudiced a party). Because plaintiffs have failed to demonstrate prejudice, they are not entitled to relief.

Affirmed. Defendant, the prevailing party, may tax costs. MCR 7.219(A).


/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder